BENJAMIN BOOTH'S APPEAL FROM PROBATE.

Several brothers and sisters purchased together a piece of land in 1842 under a parol agreement among themselves that *A*, one of their number, should take the title and hold it in trust for the benefit of their mother, during her life, and after her death for themselves.  *A* in 1843 conveyed the land to *B*, who had no knowledge of the trust, and *B* soon after conveyed it to *C*, one of the sisters, she agreeing by parol to carry out the original trust.  In 1845 *C* sold the property to a stranger, receiving the price for the same, which she held till her death, her mother receiving no benefit from it.  In 1856 the mother died.  In 1847 *C* married, and died in 1865.  After her marriage and within six years before her death she repeatedly acknowledged her indebtedness to her brothers and sisters

for their shares of the money received by her. After her death they presented a claim against her estate for the money. Held,

1. That the trust, so far as the interest of the claimants was concerned, was merely a resulting trust, that .would be implied by law from their having paid for the land, and could be proved by parol evidence.
2. That the conveyance to *B* did not purge the trust in the hands of *C*, who had notice of it and agreed to perform it.
3. That the acknowledgment of the indebtedness by *C*, while married, was sufficient to prevent the operation of the statute of limitations on the claim.
4. That in the circumstances interest ought to be allowed on the money in the hands of *C*, from the time she received it.

APPEAL, by the executor of the will of Cynthia Booth, from the allowance of a claim by the commissioners on her estate, in favor of Cyrus Peck and others. The following facts were found by an arbitor to whom the case was referred. ·

Isaac Peck, with seven brothers and sisters had inherited a tract of land from their brother, Asa Peck, previous to the year 1842. In March, 1842, it was agreed among them by parol that the land should be sold and the proceeds invested in another piece of land called the Jones place, and that the latter should be conveyed to the said Isaac Peck, to be held in trust by him for the use of their mother, Mrs. Abijah Peck, while she lived, and after her death for the use of themselves. In pursuance of the agreement they sold and conveyed the land to Simeon Hickock, and the proceeds were taken by Isaac Peck, and with them and some money of his own he purchased the Jones place, and took an absolute deed of the same to himself. The consideration was described in the deed as a valuable sum received of the grantee. In January, 1843, Isaac Peck conveyed the Jones place, for a temporary purpose, to Daniel Curtiss, who had no knowledge of the trust. In April, 1843, Daniel Curtiss conveyed it to Cynthia Peck, one of the eight heirs above mentioned, and she agreed at the time to hold the property in trust for the same purposes for which it had been held by Isaac Peck. On the 1st of September, 1845, Cynthia Peck sold and conveyed the property to John E. Smith and others, for $475, no part of which was applied for the benefit of her mother, Mrs. Abijah Peck. In 1847, Cynthia Peck married Noah H. Booth, who survives her. In

September, 1856, Mrs. Abijah Peck died.  In June, 1865,
Cynthia Peck, then Mrs. Booth, died.

During the existence of the married relation between said
Cynthia and said Noah, and within six years before her death,
she repeatedly acknowledged her indebtedness to the other
heirs, on account of the money so received by her, and prom-
ised payment of the same.

The evidence offered by the appellees to prove the trusts
was parol, and the appellant objected to the same.

If the court should be of opinion that the law is so, that
parol evidence was inadmissible to prove the trusts; or that
the trust was purged and terminated by reason of the convey-
ance to Daniel Curtiss; or that the admissions and promises
of Cynthia Peck made during her coverture do not remove
the bar of the statute of limitations; then the auditor found
that there was nothing due the appellees from the estate.  But
if the court should be of opinion that parol evidence was ad-
missible to prove the trusts; that the trust continued in Cyn-
thia Peck; and that her admissions and promises made during
her coverture did remove the bar of the statute of limitations;
then, after deducting her individual interest in the money re-
ceived on her sale of the Jones place, the auditor found that
her estate was indebted, by reason of the foregoing facts, to
the heirs, (other than herself,) who released the first-men-
tioned land to Hicock, and to those who legally represent such
of them as are deceased, in the sum of $162.52, with interest
thereon from such time as it might be lawfully computed.

Upon these facts the case was reserved by the Superior
Court for the advice of this court.

*Huntington*, for the appellant.

1. The claim of the appellees in this case, and which they
endeavor to prove by parol evidence, discloses an express trust.
But an express trust in relation to land conveyed by an abso
lute deed, expressed to be for a valuable consideration, can
not, in the absence of fraud, mistake or accident, be proved by
parol evidence.    4 Kent Com., 305; 2 Swift Dig., 108;

*Dean* v. *Dean*, 6 Conn., 285 ; *Brainerd* v. *Brainerd*, 15 id., 575.

2. The trust attempted to be proved by parol in this case, cannot be a resulting trust. 1st. The appellees have proved an express trust by parol evidence; and an express trust, proved by parol only, will prevent a resulting trust. 2 Sugden on Vendors, 138 ; *Bellasis* v. *Compton*, 2 Vernon, 294 ; 2 Washb. Real Prop., 168. 2d. Because the purchase money was not paid at the time when it is claimed the trust was created, payment at the time being indispensable to create a resulting trust. 4 Kent Com., 306, and note *a*. 2 Swift Dig., 112 ; *Botsford* v. *Burr*, 2 Johns. Ch., 405 ; *Sterret* v. *Sleeve*,.5 id., 19 ; *Rogers* v. *Murray*, 3 Paige, 390.

3. The estate was purged of the trust by the title passing to Daniel Curtiss, a *bona fide* purchaser without notice. 1 Story Eq. Jur., §§ 409, 410.

4. The admissions and promises found to have been made by Cynthia Booth during coverture, do not remove the bar of the statute of limitations. And if they amount to any thing, they are simply parol promises to pay the debt of another.

5. If the claim as found by the auditor is allowed, interest can be added only from the death of Mrs. Abijah Peck. She, and not the present claimants, was entitled to the interest during her life.

*Cothren*, for the appellees.

BUTLER, J. It appears from the finding in this case that the claimants, or those whom they represent, as heirs at law of Asa Peck, deceased, furnished to their brother, Isaac Peck, a certain amount of money, pursuant to an agreement that it should be used by him in the purchase of a place, to be held by him in trust, for the use and benefit of their mother during her life, and on her decease for the use and benefit of said heirs. The case differs from the ordinary case, where money is furnished by one party to another party, to enable the former to purchase property and hold in his own name for the benefit of the latter, in this, that an express trust was intended

to be created for the benefit of the third party, their mother. The creation of such an express trust for Mrs. Peck was the sole object and purpose of the arrangement, and so far as the agreement may be said to contemplate any further trust, it had no other object or purpose than to secure to those who advanced the money, their interest, on the termination of the trust for the mother.   So far then as there was any trust in favor of the heirs who advanced the money, it was such as the law would have implied, or would by implication have resulted to them from the mere fact that they furnished the money for that purpose.   Upon a fair construction of the finding therefore, we are of opinion that the agreement, so far as it related to the interest of the claimants, imported no more than such agreements usually import, when money is furnished for the purchase of property, or than the law would import from the act, and that the trust was not of such a character that parol evidence could not be admitted to prove it.   The decedent moreover, in her life time, disposed of the property and repudiated the trust for Mrs. Peck, and thenceforth acknowledged that she held the share of the claimants *in money* to their use. We do not think under such circumstances her representative can maintain the defence he has attempted to interpose.

2. We have no difficulty in relation to the claim that the trust was purged, by reason of the fact that the title passed from Isaac to Cynthia through Daniel Curtiss.   It was substantially a conveyance from Isaac to Cynthia, she agreeing to hold for the same uses and purposes.

3. When Cynthia Peck sold the property and repudiated the trust for Mrs. Peck, a proportion of the avails of the sale, equivalent to the sum originally advanced by the claimants, became money had and received to their use, in her hands, and a lawful claim in their favor.   The subsequent promises and acknowledgments of Cynthia were sufficient to prevent the statute of limitations from barring the claim, and it is a valid and subsisting one against her estate.   And as Cynthia disposed of the trust estate and repudiated the trust, and both were acquiesced in by Mrs. Abijah Peck, we are further of

opinion that the claimants are entitled to interest from the time of the sale.

The Superior Court is advised to decree accordingly.

In this opinion the other judges concurred.