## THE BUTTE HARDWARE COMPANY vs. THOMAS WALLACE AND ANOTHER.

New Haven & Fairfield Cos., June T., 1890. CARPENTER, LOOMIS, SEYMOUR, TORRANCE and FENN, Js.

$W$ resided in this state and $K$ in the state of Montana, and they were the principal members of a corporation in Montana which owned and operated a mine there. The plaintiff, a trading corporation in Montana, delivered goods to $K$, charging them to $W$ & $K$ as partners. Held—

1. That evidence was not admissible on the part of the plaintiff that it was the general understanding in Montana that the mine was run on the credit of $W$ & $K$.

2. That declarations of $K$ made at the time of the purchase of the articles, that $W$ was a partner with him, were not admissible without proof that $W$ had authorized or had knowledge of them.

3. That the evidence of the general understanding in Montana was not admissible as tending to prove that $W$ knew that $K$ was operating the mine in the name of $W$ & $K$.

And held that a declaration of $K$ in giving a note signed $W$ & $K$, that they were partners, did not become admissible as a part of the res gesta of giving the note.

The deposition of $K$ was taken by the plaintiff and the defendant asked him, on cross-examination—"Was there ever any partnership existing between you and $W$?" He answered, "There never was any such partnership; the names were used for convenience in keeping the bank account." The court admitted the question for the sole purpose of showing that there was no partnership by agreement. Held that the question was not inadmissible as calling for the opinion of the witness as to what in law constituted a partnership.

The admission of relevant evidence on the part of the defendant to show that the business was notoriously carried on by $K$ at the mine in the name of the corporation, did not involve the propriety of showing on the plaintiff's part that the business was carried on in the name of $W$ & $K$, with no proof that $W$ had knowledge that it was so carried on.

A question objectionable as being a leading one, but not otherwise, was put to a witness in giving his deposition. The question was not objected to until at the reading of the deposition upon the trial. Held that the objection was properly overruled because not made at the time, when it could have been obviated by changing the form of the question.

The opinion of the trial court that the verdict of the jury is not against the weight of the evidence, is a valid ground for a refusal to report the evidence for the purpose of an appeal on that ground.

[Argued June 10th—decided September 12th, 1890.]

ACTION on sundry notes and an account for goods sold ; brought to the Superior Court in New Haven County, and tried to the jury before *Andrews, J.* James King was made a defendant, but no service was made upon him. The whole question was whether the defendant Wallace was liable with him as a partner. Verdict for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*J. O'Neill*, for the appellant.

*S. W. Kellogg* and *J. P. Kellogg*, for the appellee.

FENN, J. In this action, tried to a jury, and in which the defendant obtained a verdict, the plaintiff, a corporation located in Butte City, Montana, sought to recover from Thomas Wallace, of Ansonia in this state, the only defendant upon whom service was made, upon certain alleged rights of action against said Wallace and one James King of said Butte City. It was admitted that Wallace did not personally make any of the contracts recited in the complaint, and it was not claimed that he was separately liable upon any of the causes of action arising therefrom, the only substantial controversy in the entire case being whether or not King had authority to make Wallace liable upon such contracts jointly with himself.

The alleged errors of the court, as assigned in the thirty-seven reasons of appeal, are partly in relation to rulings upon evidence, but much more largely concern the charge of the court to the jury. Very fortunately however, as we deem, the manifold assignments which relate to the charge do not appear to require, or even warrant, the space which would be necessary for their detailed consideration.

On the trial the evidence tended to show that prior to August, 1882, there was a corporation in Butte City called " The Belle Silver & Copper Mining Company," owning The Belle Mine, so called. The corporation was then in great financial trouble, its real estate mortgaged, its personal property attached, its business at a stand still. About

this time King interested himself in its affairs, and induced Wallace to become interested. King became the owner of a majority of the stock, one half of which he transferred to Wallace. The attachments were released and business recommenced. King was made president and Wallace a director, and there were other changes. Under the new administration the business was carried on until 1885, when it collapsed. In the carrying on of the business supplies were furnished from time to time by various parties, the plaintiff among others. All negotiations and all contracts were made by King, who attended personally to all the affairs of the company in Montana, Mr. Wallace being there usually but once in each year (in 1884 twice), remaining but for brief periods on each visit.

It was the claim of the plaintiff that Wallace and King were partners in all this business, that all the negotiations and contracts made by King were on the joint account and for the joint benefit of himself and Wallace, and that the law would imply a partnership from the conduct of the business, in the absence of any agreement therefor; and further, that Wallace had permitted King to represent that he was a partner, that they made the contracts set forth in the complaint relying upon such representations, and that therefore Wallace was liable to them as a partner with King; all of which Wallace contested, claiming that all the business carried on, at and about the mine, was conducted in the name and on the account of the corporation; that whatever was done by him or King in these matters, was done by them as officers in and stockholders of the corporation, and on its account.

The plaintiff, as a part of its evidence, read the deposition of King, taken by it. Among other questions in the deposition, the plaintiff asked the deponent:—" Was it not the general understanding in Butte that the mine and smelter were run on the credit of Wallace and King?" The defendant objected to the question, and the court ruled it out. This ruling was correct. *Brown v. Crandall*, 11 Conn., 92. Indeed the plaintiff did not undertake to maintain, in the

argument before this court, that such evidence would be admissible to prove the actual existence .of a partnership, and the finding states, as we have seen, that the only substantial controversy through the entire case was, whether or not King had authority in making these contracts to make Wallace liable upon them jointly with himself; but the plaintiff says in its brief that this evidence was admissible and should have been received for the purpose of showing that the plaintiff in fact gave credit to Wallace and King; also as tending to prove that Wallace knew that King was operating the property in the name of Wallace and King; and that the notoriety of that fact was of importance, since if everybody else knew it, he should be presumed to have known it also. Inasmuch as this question was embraced in a deposition taken before the trial, and objection to it was taken and noted at the time, we are constrained to believe that these suggestions of the plaintiff now made are in the nature of after-thoughts, as a further suggestion of the plaintiff that the evidence ought to have been admitted, as dependent on a certain portion of the charge of the court to the jury would certainly seem to be; but whether so or not, we fail to apprehend the force of the suggestions made, for without taking time to mention other cogent objections to the admissibility of the evidence offered for such purposes, if the plaintiff, or those whose claims, as under some of the counts in the complaint it is alleged, belong to the plaintiff by assignment, gave credit to Wallace and King, that fact is susceptible of direct proof, and general reputation, or understanding that business was done on their credit, is not the best evidence, or relevant evidence of such fact. In the language of the court in *Brown* v. *Crandall, supra*—" There is nothing in the nature of the fact to be proved requiring the admission of such testimony." So also of the further claim of the plaintiff, that this evidence was admissible as tending to prove that Wallace knew that King was operating the property in the name of Wallace & King—as the plaintiff puts it, " the notoriety of the fact." Not only is such evidence inadmissible to prove it to be a fact, but even

if such proof were otherwise supplied, and it certainly does not seem to have been, a general understanding in Montana would appear to be a somewhat dangerous basis upon which alone to impute to Mr. Wallace, who resided in Connecticut, either actual or constructive knowledge thereof. The question propounded by the plaintiff—" If everybody else in the world knew this fact except Mr. Wallace, would not this be of significance ? "—is hardly pertinent.

The plaintiff inquired of Mr. King if one Pitman had not brought a suit in Butte City against Wallace & King. The defendant objected to the question, but as the court admitted it, the plaintiff would not seem to have been aggrieved, and this, though assigned as the second ground of appeal, was not pressed.

Upon the cross-examination of King the defendant asked him—" Was there ever any partnership existing between you and Thomas Wallace ? " He answered " There never was any such partnership, nor were we ever partners under the name of Wallace & King. The names were used for convenience in keeping the bank account." The plaintiff objected to the question, on the ground that it called for the opinion of the witness as to what in law constituted a partnership. The court admitted the question solely for the purpose of showing that there was no partnership between these men by their agreement, and instructed the jury that " a partnership might be proved to exist by the acts of the parties when there was no agreement for one, and sometimes even against their intention." As we understand the record, this instruction was given at the time of the ruling, but whether so in fact, or as a portion of the final charge, which is recited in full in the record, and in which, while this exact form of expression may not appear, its substance is clearly and at large contained, is not material, since it is clear to us that the jury could not have misapprehended the purpose for which this testimony was admitted and the limitations applied to it by the court. The plaintiff in its brief, citing *Reboul* v. *Chalker*, 27 Conn., 114, says :— " Whether there was a partnership was a question of fact

The witness should have been allowed to state just what the facts were, and the court should then have instructed the jury that the facts proved did or did not constitute Wallace and King partners." But this, excepting the phrase " the facts proved," which, so far as they were disputed, were for the jury and not for the court to determine, is a correct statement of what the court actually did. Rightly understood and as limited and explained by the court, it could not be misconceived; the statement of the witness was exclusively one of fact. There was, in fact, no agreement to be partners. The names " Wallace & King " were used for convenience only. One question was, whether they were partners *inter sese*. The answer pertained to that question alone. Other forms of liability remained, which this reply did not affect, or assume to affect. As this court says, in the very recent case of *Morgan* v. *Farrel*, 58 Conn., 422—" Between the parties themselves this relation cannot exist except by their voluntary agreement." The fact testified to, a relevant and material one, was simply that no such agreement ever existed. The evidence was undoubtedly admissible.

The next assignment relates to the ruling of the court in not excluding a leading question, put by the defendant on cross-examination, to King, at the time his deposition was taken by the plaintiff before the trial. At that time this question was not objected to, but at the reading of the deposition, upon the trial, the plaintiff did object to the question. The court overruled the objection for the reason that, if it had been made at the time of the taking, it could have been obviated by changing the form of the question. The substance of the answer being unobjectionable, apart from the fact that the question was put upon cross-examination, the ruling was correct, and its reason sanctioned by the decision of this court, being identical in principle with what was held in *Bennett* v. *Gibbons*, 55 Conn., 453.

The next assignment relates to a paper alleged to be signed " Wallace & King," a copy of which is said to be set forth in the tenth count of the complaint. The defend-

ant objected to its being read to the jury. The court permitted it to be read, and instructed the jury that it was admissible as evidence under the fifth count, which was for the same cause of action as the tenth count, and that it was not admissible under the tenth count. The plaintiff says that it should have been admitted under the tenth count also, under which count the record states that no other evidence was offered, but as the case was not committed to the jury at all upon the tenth count, and as that count, as well as the paper which it is said to recite, does not anywhere appear in the record before us, and we have no knowledge of their contents, we assume that that count must have been withdrawn. At any rate we cannot discover error.

The note described in the eighth count was given by Mr. King, using the name of "Wallace & King." The plaintiff, who claimed this note by assignment, offered to prove by Mr. Largey, the payee of the note, that Mr. King, at the time he signed it, stated, in reply to a question by Mr. Largey, and to induce him to accept it, that he and Wallace were partners. To this declaration of Mr. King the defendant objected. The court inquired of the counsel for the plaintiff if they claimed or expected to show that Mr. Wallace ever knew that such a declaration had been made by Mr. King. They replied that they did not make such claim and that they had no expectation of being able to do so. The court sustained the objection and rejected the testimony. The plaintiff says that this testimony should have been admitted as a declaration accompanying the act done, a part of the res gesta, and cites Sears v. Hoyt, 37 Conn., 406, and Card v. Foot, 56 id., 369, neither of which cases appears to us to present a question analogous in any respect to the one here presented. They also say it was admissible for the purpose of showing that the business of operating the Belle property was upon the credit of Wallace & King and not upon that of the Belle Company, in reference to which claim sufficient is said in another portion of this opinion. That the declarations of a person are never admissible against another to prove him a partner, either in fact or

through estoppel, when the latter has no notice or knowledge of them, is too well established, too well grounded in reason, and should be too elementary, to require, or even warrant, the citation of authorities in support of the position ; and we can discover no ground of distinction or exception as applicable here.

These remarks will apply with full force to other assignments of error, based upon the exclusion of declarations of King, made to divers other persons under similar circumstances, in the like absence and without the knowledge or authority of the defendant. Also to the declarations of Walter King, son of James King, a clerk and bookkeeper at the mine.

To show that the plaintiff was the legal owner and the holder of the note mentioned in the eighth count of its complaint, its counsel asked Mr. Largey, who was the superintendent and general manager of the plaintiff, the following question, as appears in his deposition:—*Question.* "State whether there is any endorsement on the P. A. Largey note?" *Answer.* "It is simply an endorsement to The Butte Hardware Company by myself. That is my signature."

This note as exhibited in evidence was endorsed simply "P. A. Largey." On cross-examination the witness stated that he made such endorsement before the commencement of this suit; that the plaintiff took it and gave him credit for the amount; and that whether in fact credited for it on the books of the company he had made no examination to ascertain and did not know. On inspection of the books no credit could be found for the note, and it was agreed that no such credit appeared on the books. There was no other evidence to show that this note was owned or holden by the plaintiff. The plaintiff's counsel objected to the agreed fact that there was no such credit being offered in evidence, insisting that it was immaterial whether there had been any credit to Mr. Largey; that the legal title to the note could be and was transferred by indorsement and delivery; and that the fact that there was no credit to Largey, or that

nothing was paid or to be paid, for it, would not affect the plaintiff's title thereto. The court permitted this evidence to go to the jury, limiting its effect, by instructions, to such bearing as it might have upon the question whether there had been in fact any delivery of the note from Mr. Largey, the payee, to the plaintiff, as represented by Largey, as its agent and manager, saying that since, in either case, he would have possession of it, the circumstances were peculiar, that as there would be no visible change of possession the absence of credit was a fact which the jury might consider in determining whether there had been an actual one, and in which capacity, individual or representative, such possession was held. Although, if this ruling had been incorrect, it appears manifest that the plaintiff could not have been harmed by it, since the verdict for the defendant upon all the other counts demonstrates that the jury found that King had no authority to make Wallace liable upon his contracts, which the record states "was the only substantial controversy throughout the entire case," we further think the ruling unexceptionable. The court fully sanctioned the plaintiff's claim that the title to a negotiable note, indorsed as this one was, would pass by such indorsement and by delivery, and it was only as bearing upon the question whether there had been such delivery that the evidence was permitted to go to the jury.

For the purpose of showing that the business carried on at the time under the direction of King was conducted by and in the name of the corporation, and also that the plaintiff knew how that business was carried on, and gave credit to the Belle corporation and not to the partnership, the defendant offered in evidence certain printed bill-heads, letter-heads, return envelopes, time tickets, and printed forms for orders, copies of which were annexed to the record, with proof that they were the same used in that business, and that orders headed and printed as they were were sent from the mine to the plaintiff, from time to time, beginning as early as January, 1883, and continuing until May, 1885, and also proof that the goods mentioned in the plaintiff's

bill of particulars, and for which this suit was brought, were forwarded by the plaintiff upon orders having the printed heading. The plaintiff objected to this evidence, but the court admitted it.

Although this evidence seems so clearly relevant that we should have been disposed to dismiss the subject without discussion, yet to the plaintiff's claim, "that if these were admissible for the purpose of showing that the business was carried on in the name of the Belle Company, one of the purposes for which it was introduced, it is difficult to see how declarations made by King that the business was carried on by Wallace & King could be excluded," we should perhaps reply, that though it seems hardly fair to separate and detach that purpose from the other related ones for which the evidence was offered, yet so detached there appears but little similitude between evidence that a business was in fact and openly and notoriously carried on in a certain way, under the direction of King, and the secret and uncommunicated declaration of King, not, as the plaintiff's counsel find it necessary to put it, "that the business was carried on by Wallace & King," but, as the record states it, "that he and Wallace were partners." The one is direct, and the best evidence of a relevant fact, offered by the defendant to meet and rebut that portion of the plaintiff's case wherein it is sought to hold the defendant as a partner by implication and estoppel; the other was evidently offered by the plaintiff in chief, to prove the existence of an actual partnership; but even if offered for the other purposes for which the plaintiff now claims it to have been admissible, there is nothing analogous between the two.

The remaining twenty-six assignments, except the thirty-third, all relate to the charge of the court to the jury. The charge is very lengthy, and we have examined it with much care, with special reference to each of these assignments, and we feel constrained to say that not only does it appear to us correct, clear, and well adapted to direct the jury to a full apprehension and right determination of the issues involved, but that none of the reasons of appeal relating to

the charge present any questions of law which have not already been decided, and fully enunciated in the opinions of this court, in recent and well considered cases. We therefore refrain from a consideration which would simply involve a re-statement of established and declared principles.

There is another ground for declining to consider these reasons of appeal. The difficulties are well-nigh insuperable. Most of them are so largely based upon averments of alleged facts, which nowhere else appear or are suggested in the record, that without such allegations they would lack force and coherence. Indeed, in a degree which we at least trust is without precedent and will remain without imitation, not only are these reasons distended with such allegations, but the briefs and oral arguments on both sides were largely permeated with the same vice. We should be indeed sorry to believe that any decision, conduct or utterance of this court has ever given any counsel warrant to imagine that he might strengthen the presentation of his case, or increase his chances of success, by such departure from the only chart by which we can be guided. And we avail ourselves of this exceptional deviation to express our entire disapproval of such a practice, including also in such disapprobation that which is neither allegation nor argument, but only cavil, and censure of the trial court. It would be unfortunate indeed for the administration of justice and of all concerned therein, if the pathway to ultimate victory could ever be supposed to turn in that direction.

The thirty-third assignment is, that the court erred in refusing to report the evidence introduced on the trial. This the record discloses the court was requested to do, but declined on the ground that it was of opinion that the verdict of the jury was not only not against the weight of the evidence, but clearly and manifestly in accordance therewith. This would seem to furnish a valid ground for such refusal. Its correctness in fact we have no right to review, and see no occasion to doubt.

There is no error in the judgment complained of.

In this opinion the other judges concurred.