ADDISON H. COE *vs.* MORRIS KUTINSKY ET ALS.

First Judicial District, Hartford, January Term, 1910.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A partnership cannot be proved by the declarations of one of its alleged members, at least as against any one but the declarant; and the same rule applies as to the proof of agency. Accordingly, the declarations of a purchaser of merchandise, to the effect that he was buying on behalf of his codefendants or for a firm of which they were all members, are inadmissible against them, in the absence of facts estopping them from denying such statements.

An averment which is wholly unconnected with any other allegation in the complaint is irrelevant and mere surplusage; and therefore evidence offered to prove such averment may very properly be excluded.

The plaintiff sold his crop of tobacco ostensibly to *C,* one of the defendants, but sought to recover its purchase price from the other defendants also, a New York firm, upon the theory that they were either partners of *C* in the purchase or his undisclosed principals. The only evidence offered in support of this contention was a writ-

Coe *v.* Kutinsky.

ten contract between *C* and that firm wherein the former agreed to sell and the latter to buy certain grades of tobacco of the Connecticut and Massachusetts crop of 1905 packed at *C's* warehouses, at specified prices per pound, to be paid for when said firm had examined and accepted it, *C* undertaking to guarantee them a certain minimum profit when the tobacco should be sold by them, while any profits exceeding the amount thus guaranteed on the different grades were to be equally divided between them; and to assist *C* in buying the tobacco said firm agreed to advance him not more than $5,000, as security for which all the tobacco bought by *C* under the agreement was to be pledged to them. *Held:*—

1. That it was unnecessary to determine whether, under this agreement, the parties thereto might have become partners as to such portion of the tobacco as the firm had examined and accepted, since they certainly did not become partners until that time, nor as to all the rest of the tobacco which *C* might have seen fit to purchase; and inasmuch as it did not appear that the tobacco in question had ever been inspected and accepted by the New York firm, there was nothing upon the face of the agreement to show that the members of such firm were partners or undisclosed principals of *C* in his purchase of the plaintiff's tobacco.

2. That there was nothing in the language of the instrument itself to show that it had been executed by the New York firm with a fraudulent purpose of avoiding liability upon their part for the tobacco purchased by *C;* nor any evidence of extrinsic facts and circumstances indicating any such fraud upon the part of those defendants.

3. That the agreement being the only evidence offered to show a liability upon the part of those defendants, a judgment of nonsuit was properly rendered against the plaintiff in respect to them.

Argued January 4th—decided January 18th, 1910.

ACTION to recover for tobacco alleged to have been sold to the defendant Case for and on account of the other defendants, brought to the Superior Court in Litchfield County where the plaintiff was nonsuited in a trial to the jury before *George W. Wheeler, J.,* from which judgment he appealed. *No error.*

Theodore M. Maltbie and William M. Maltbie, for the appellant (plaintiff).

William F. Henney and Hugh M. Alcorn, for the appellees (defendants).

THAYER, J. The plaintiff by this action seeks to recover a judgment against the defendants Kutinsky, Alder & Company, hereinafter called the defendants, for the price of certain tobacco sold by him to the other defendant, Luther M. Case, the plaintiff claiming that these defendants were either partners of Case or his undisclosed principals in the transaction. Case has become bankrupt and made no defense.

The complaint is substantially identical, except as to dates and amounts, with that in the case of *Arnold* v. *Kutinsky et als.*, the same defendants, reported in 80 Conn. 549, 69 Atl. 350. The answer was a denial of all the allegations of the complaint, except that the execution of the written agreement, Exhibit A, which was made part of the first paragraph, was admitted. After the plaintiff had introduced his evidence and rested his case, the court rendered judgment as of nonsuit in favor of these defendants, and later denied a motion to set aside the judgment. The court's denial of this motion, and its rulings in excluding evidence offered by the plaintiff, are made the grounds of this appeal.

The evidence shows that the plaintiff sold the tobacco in question to Case, that he was to be paid for it in cash as soon as it was sorted and weighed at the packing house of H. L. Miller in Southwick, Massachusetts, and that he knew nothing of Kutinsky, Alder & Company in the transaction. There is no evidence tending to show that these defendants were partners or undisclosed principals of Case in the transaction. The nonsuit was properly granted, therefore, and the judgment cannot be set aside unless there was error in the rulings complained of in rejecting evidence offered by the plaintiff, which tended to prove such partnership or agency.

The excluded evidence consisted of (1) an oral statement made to the plaintiff by Case, at the time of the purchase of the tobacco, that he had parties behind him that enabled him to pay cash for it; and (2) the written agreement,

Exhibit A, made part of the complaint, which was offered in evidence by the plaintiff. Each of these offers was for the purpose of showing that Case was acting for these defendants, or that they were partners with him in the purchase.

Case's statement to the plaintiff was made in the absence of the defendants, and, so far as appears, without their knowledge, and was properly excluded. It was inadmissible against these defendants for the purpose of proving that they were either his undisclosed principals or his partners. An agency or partnership cannot be thus proved, as against others than the declarant, by his declarations. *Fitch* v. *Chapman*, 10 Conn. 8, 12; *Butte Hardware Co.* v. *Wallace*, 59 id. 336, 342, 22 Atl. 330; *Robins* v. *Warde*, 111 Mass. 244, 245. His declarations are mere hearsay as to them. The agency must be proved in some other way before his declarations can be admissible against his principals or associates. The statement was far from being a representation that these defendants, or any one else, were Case's partners in the purchase, or that he was acting as agent therein for them or any other person. But the authorities cited show that, had he in express terms held himself out to be the partner or agent of the defendants, such representation, in the absence of facts estopping the defendants from denying it, would not be admissible to prove the agency or partnership.

The first paragraph of the complaint is wholly unconnected with any other allegation in the complaint, and is merely impertinent surplusage. *Arnold* v. *Kutinsky*, 80 Conn. 549, 550, 552, 69 Atl. 350. The agreement, Exhibit A, was not offered for the purpose of proving the allegations of that paragraph, and, had it been, would have been properly excluded, because it is unnecessary and improper to offer proof of impertinent allegations; but it was offered as tending to prove the allegation of the second paragraph, that the sale to Case was a sale to the defendants, and was

claimed, as already stated, as showing that they were his partners or undisclosed principals.

The agreement is too long to be quoted here in full. It purports to be made in consideration of $1 to each of the parties paid by the other, and of an advancement of money to be made by these defendants, parties of the second part, to Case, party of the first part. The first clause reads as follows: "The party of the first part agrees to sell and deliver to the party of the second part, all of the tobacco of the Connecticut and Massachusetts crop of 1905, which are known as 'Dark Wrappers' packed at H. L. Miller's at Southwick, Mass., and L. M. Case packing house, Barkhamsted, Ct., and 'Seconds' which have been or shall hereafter be packed or caused to be packed by the party of the first part, at all his warehouses or otherwise, except that part which is packed at the warehouse of the party of the first part, at Pine Meadow, Connecticut, and the price of said tobacco shall be fifteen cents per pound, packing weight, to be paid for by the party of the second part, when the party of the second part shall have examined and accepted same, less the amount of such goods as may be rejected by the party of the second part, and the party of the first part agrees to sell and deliver to the party of the second part all of the tobacco of the Connecticut and Massachusetts crop of 1905, which are known as 'Top Leaves' and 'Fillers,' which have been or shall hereafter be packed or caused to be packed by the party of the first part, at his warehouses, L. M. Case packing house, Pine Meadow and Barkhamsted, and H. L. Miller, Southwick, Mass., or otherwise, and without exception, the 'Top Leaves' at the rate of eight cents per pound on the scale after sweating and sampling and the 'Fillers' at the rate of five cents per pound after sweating and sampling, to be paid for after examination and acceptance, less the amount of such goods as may be rejected by the party of the second part."

The second clause provides that Case shall keep an accurate record of all Connecticut and Massachusetts tobacco purchased by or for him, showing in detail all "dark wrappers," "seconds," "top leaves" and "fillers," which record is at all times to be open to the inspection of the defendants.

In clauses 3, 4, 5, 6 and 8 it is stipulated that Case shall guarantee to the defendants one per cent. net profit per pound on all dark wrappers and seconds, and one half of one per cent. profit per pound on all top leaves and fillers, no matter at what price the tobacco may be sold; that no charge for warehouse expenses, storage, insurance, or sweating shall be made by either party; that both parties shall use their best endeavors to sell and dispose of the dark wrappers and seconds, no sale made by Case to be consummated until approved and confirmed by the defendants in writing; that the top leaves and fillers shall only be sold by the defendants; that the profits realized on the sale of dark wrappers and seconds, over and above sixteen cents per pound, and on the top leaves, over and above eight and one half cents per pound, and on the fillers, over and above five and one half cents per pound, shall be divided equally between the parties; and that Case shall remit to the defendants all profits realized by him on the sale of dark wrappers and seconds, over and above fifteen cents per pound, as soon as the sale of any such tobacco shall be consummated.

Clauses 7, 10 and 11 provide that the defendants shall advance to Case to assist him in buying said tobacco various sums not exceeding in the aggregate $5,000, to be charged to him, and shall have the right to retain such share of the profits as he may be entitled to and apply the same on account of the advancements; and that Case shall pledge to them each and every lot of tobacco purchased by him pursuant to the agreement, as collateral security for the payment of such advances.

The remaining seven paragraphs relate to the sorting, preparation, and packing of the tobacco, the insurance, the payment of advances, and the termination of the agreement.

It is clear from the agreement that the parties contemplated that Case was to purchase tobacco of the Connecticut and Massachusetts crop of 1905. His business, as appears from the agreement and evidence, was the purchase and packing of tobacco to sell again, and he had several warehouses where it was packed. He had dealt with the plaintiff with respect to at least two crops before that now in question. The evidence shows that in packing the Connecticut and Massachusetts crops six grades are made: two, "light wrappers" and "mediums," in addition to the four mentioned in the agreement. The defendants, under the agreement, acquired no right to purchase any part of these two grades, or to purchase any seconds packed at the Pine Meadow warehouse, or any dark wrappers packed elsewhere than at the Miller and Barkhamsted warehouses. They did acquire the right under it to purchase all the top leaves and fillers wherever packed, all the seconds except such as were packed at the Pine Meadow warehouse, and all the dark wrappers packed at the Miller and Barkhamsted warehouses; but the title was not to pass as to this portion until it had been packed and after the defendants had examined and accepted it.

It was competent for the parties to thus contract with reference to a portion of the crop which Case was proposing to purchase. If they agreed to become partners with respect to the management and disposition of that portion after it had been accepted by the defendants, or if, without intending to make themselves partners, they so agreed with reference to the management and disposition of it that the law would hold them to be partners as to that portion, they were not partners as to the remainder of the tobacco, nor as to any of it at the time of its purchase by

Case. *Morgan* v. *Farrel,* 58 Conn. 413, 422, 20 Atl. 614. It is unnecessary, therefore, to inquire whether, under the agreement, they would become partners as to that portion after it had been accepted by the defendants. It does not appear in the case that it was ever inspected or accepted by the defendants. Upon the face of the agreement there is nothing to show that the defendants were either partners or principals of Case in the purchase of the plaintiff's tobacco.

The plaintiff claims that the terms of the contract conclusively show that the sale mentioned in the first clause is a pretended one only, and that the provision for it was inserted in the contract for the fraudulent purpose of avoiding liability by the defendants for the tobacco purchased by Case. Had the clause provided for the sale to the defendants of all the tobacco purchased, the suggestion would have more plausibility in view of the peculiar method provided for dealing with the tobacco after it should pass to the defendants. But provision is made for the sale to the defendants of only a part of the tobacco which Case expected to purchase. Such a sale is a natural one for a person to make who is purchasing and packing tobacco for the purpose of reselling it. Fraud is not to be presumed, and nothing on the face of the agreement shows it to have been made with a fraudulent purpose. No evidence of facts and circumstances indicating such fraud, or in any way connecting the defendants with the purchase of the tobacco by Case, was offered. As the agreement did not of itself furnish such evidence, it was properly excluded, and the nonsuit properly granted.

There is no error.

In this opinion the other judges concurred.