EDWARD ALSPAUGH ET AL. (FLORAL CREAMERY COMPANY) vs. JOHN H. DILLON ET AL.

Third Judicial District, New Haven, January Term, 1910.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

In an action to recover an alleged balance for a car-load of butter, the parties were at issue as to the terms of the sale, the plaintiffs claiming that their telegraphic offer of seventeen cents per pound "net to us," which was sent to the agent of the carrier at New Haven and communicated by him to the defendant, had been accepted by them, while they insisted that they had orally agreed with such agent to take it for the price named provided they were to be free from all charges against them for its transportation. A verdict having been rendered for the plaintiffs, the defendants appealed. Held:—

1. That the fact that the telegram containing the plaintiffs' offer was addressed to the agent of the carrier instead of being sent directly to the defendants, was immaterial, provided they agreed to its terms after having seen the dispatch or after the carrier's agent had orally repeated to them its contents.

2. That the statement made by the trial judge in his charge, to the effect that the original contract for the butter had been rescinded after the car had reached its destination and the defendants had refused to accept the butter because it was not up to the quality ordered, was not objectionable, and was supported by the claims of each party and by the facts as shown by the record.

3. That in the situation in which the parties were placed, the words of the plaintiffs' offer, seventeen cents "net to us," whether taken in their ordinary sense or in the sense attributable to them by the general usage of the butter trade, meant the same thing, viz., seventeen cents per pound free from all charges and deductions; and therefore the admission of evidence to show that the words had that meaning in the butter trade, if erroneous, was harmless.

4. That evidence of what the butter was reasonably worth was properly received, since the plaintiffs might have recovered upon that basis, upon failing to prove the agreed price as alleged.

5. That requests to charge having reference to the original contract between the parties were properly refused, since it was agreed that such contract had been abandoned and a new one made.

Objections to the form of questions asked of a deponent, or because a proper foundation for them has not been laid, must be taken at the time the deponent testifies, so that an opportunity may be

had for correcting such informalities; otherwise objections of that nature taken upon the trial will be overruled.

The trial court, against a general objection that the notice was insufficient, admitted in evidence depositions taken in Kansas eleven days after the adverse party in this State had been notified. *Held* that so far as appeared there had been no improper or unreasonable exercise of the court's discretion in this ruling.

Argued January 19th—decided February 3d, 1910.

ACTION to recover an alleged balance for a car-load of butter sold by the plaintiffs to the defendants, brought to the Superior Court in New Haven County and tried to the jury before *Case, J.;* verdict and judgment for the plaintiffs for $710, and appeal by the defendants. *No error.*

*Charles S. Hamilton,* for the appellants (defendants).

*Richard H. Tyner,* with whom was *Louis M. Rosenbluth,* for the appellees (plaintiffs).

THAYER, J.    A car-load of butter was shipped from the plaintiffs' creamery in Kansas to the defendants in New Haven under an agreement that it should be fancy, fresh creamery butter, and that the defendants should pay for the same the outside New York quotations, net, on the day of arrival, delivered to the defendants. The defendants advanced $3,000 toward the payment for the butter before its arrival in New Haven, upon a draft accompanied by the bill of lading sent through the banks; the Kansas bank through which it was forwarded having agreed to indemnify the defendants. Upon the payment of the draft the bill of lading was assigned to the defendants.

When the car arrived the butter was inspected by the defendants, who refused to receive it, claiming that it was not fresh creamery butter, but a different and

inferior article.   The plaintiffs had notice of this through the defendants and the railroad company.   Thereupon some negotiations by telegraph took place, and finally the plaintiffs telegraphed the railroad freight agent, Mr. Black, at New Haven: "Let Dillon & Douglass have butter at seventeen cents net to us or reconsign to Moffit Wentworth & Co. Phila." This telegram, except the portion relating to the reconsignment of the butter, was shown to the defendants, and they thereupon accepted and received the butter, paying the transportation charges due thereon to the railroad company.

There seems to have been no dispute between the parties as to the foregoing facts.   The question in dispute between them was whether the defendants could properly deduct the amount of the transportation charges paid by them from the price of the butter at seventeen cents per pound.

The defendants claimed that the telegram referred to made Black the plaintiffs' agent, so that they were bound by his acts, and that at the time of the acceptance of the butter by the defendants' manager he stated to Black that it was accepted upon condition that the defendants were to pay for it seventeen cents per pound and no more, free from all charges against them for transportation, and that Black assented thereto and thereupon gave their manager the delivery check for the goods.   They also claimed that if there was any mistake or misunderstanding by Black as to the plaintiffs' directions, they must bear the loss from any such mistake or misunderstanding.

The court, at the request of the defendants, instructed the jury that the plaintiffs, by their telegram, constituted Black their agent to negotiate with the defendants for the ultimate delivery of the butter, and that they were bound by any act or representation of Black

to the defendants or by any condition which he may
have acceded to in turning over the car-load of butter,
and that if the defendants accepted the goods on con-
dition that they should pay seventeen cents and no
more, free from all charges against them for delivery of
the goods, the verdict should be for the defendants;
and that the plaintiffs must bear any loss resulting to
them from any mistake or misunderstanding of Black
with respect to their directions.

Under this instruction, which certainly was very fa-
vorable to the defendants, the verdict must have been
for them had the jury found that any such agreement
as claimed by them was made between Black and their
manager. As the verdict was for the plaintiffs, the
jury must have found that no such arrangement was
made.

The court instructed the jury, in substance, as re-
quested by the plaintiffs, that if they found from the
evidence that the terms and conditions of the contract
were contained in the telegram, they should find the
amount due to the plaintiffs for the butter at seven-
teen cents per pound for the number of pounds which
were actually delivered to the defendants, and from
the sum so found, if it should exceed the admitted pay-
ments, deduct those payments, and the verdict should
be for the amount of such balance, with interest. The
defendants object to the first part of this instruction
upon the ground that the telegram was not sent to the
defendants, and that it was only claimed that Black
communicated its contents to the defendants, and that
they orally made the bargain with reference to the
butter. The complaint alleges that the defendants ac-
cepted the butter under an offer of the plaintiffs com-
municated to them by Black, agreeing to pay seventeen
cents per pound net to the plaintiffs. By order of
court the plaintiffs made the telegram a part of the

complaint as showing the offer which was made. The complaint thus stated, substantially, that the defendants accepted the butter upon the terms and conditions contained in the telegram. If this was true, the telegram contained the terms and conditions of the contract. The plaintiffs claimed to have proved that Black submitted the telegram to the defendants, and that they accepted the butter upon the terms and conditions stated in it. The terms of the offer so submitted became the terms of the contract, if the offer was accepted, in the same manner that they would had the telegram been addressed and sent directly to the defendants, or had Black orally repeated the offer contained in it and the defendants had then accepted the offer. The court instructed the jury, in the portions of the charge referred to, in accordance with the claims of the parties, that if it should be found that the contract under which the butter was accepted was that which the defendants claimed was made, the verdict should be for them, but that if the telegram expressed the terms of the contract, the jury should find for the plaintiffs. The charge was not open to the objection which is urged against it.

The jury were told in the charge that it was agreed that the original contract for the disposal of the butter was rescinded after the car reached New Haven, and that the question in dispute between the parties was to be determined by the settlement by the jury of the terms of the agreement upon which the car was turned over to the defendants. The defendants object to this part of the charge upon the ground that it was not agreed as stated therein; that the fact as stated was claimed by the plaintiffs, but that the defendants claimed that that part of the original contract which provided that the butter was to be delivered in New Haven, net to the defendants, still remained in force.

No such claim appears either in the court's statement of the defendants' claim or in their requests to charge. On the contrary, it appears therein that they claimed that an entirely new agreement was made between the parties by their manager and the plaintiffs' agent Black, by which the defendants were to pay seventeen cents per·pound less freight and transportation charges for the butter, and that this was to be found by the jury from what took place between the parties at the time of the acceptance, or, if not from that, then from the telegram in question taken in connection with all the other telegrams and letters which had passed between the parties. The statement of the court to which objection is taken was in accordance with the facts as far as appears by the record.

Evidence was offered by the plaintiffs to show that the words "net to us," used in the telegram which is part of the complaint, have a special meaning in the butter trade, and the jury were instructed as to their duties should they find that by the general usage of the trade the words had such meaning. This is assigned for error upon the ground that there was no evidence to prove that there was any custom which fixed any peculiar meaning to the words. As the evidence bearing upon the question was objected to, and its admission is made the subject of several assignments of error, the present assignment must be based upon the ground that such evidence was improperly admitted. If the instruction was improper for the reason assigned, it was harmless, because the meaning of the words in the trade which was claimed to be proved was their ordinary meaning applied to the circumstances in which they were used in the present case.

There was evidence offered and admitted against the defendants' objection tending to prove the value of the butter. The answer contained a general denial of the

allegations of the complaint. If the plaintiffs failed to prove that the butter was to be paid for at the agreed price alleged, they might recover what the butter was reasonably worth. *Brewster* v. *Aldrich*, 70 Conn. 51, 54, 38 Atl. 894; *Shmilovitz* v. *Bares*, 75 Conn. 714, 716, 55 Atl. 560. The evidence, therefore, might, under the pleadings, become material, and the court properly refused to exclude it as immaterial.

Some time before the trial, the testimony of several witnesses was taken by the plaintiffs by deposition in Kansas. Among the questions propounded to them were those to which reference has been made relating to the meaning in the butter trade of the words "net to us." There was no cross-examination of these witnesses, but when the depositions came to be read in court various objections were made to these questions, mostly upon the ground that they were improper in form and that a proper foundation for asking them had not been laid. These objections were overruled. All objections not going to the substance of the testimony should have been taken at the time the testimony was given, so that informalities could be corrected. *Butte Hardware Co.* v. *Wallace*, 59 Conn. 336, 341, 22 Atl. 330; *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 708, 52 Atl. 490. This rule sustains most, if not all, of the rulings upon objections to this testimony; but if otherwise, the defendants were not harmed by its admission, because the meaning of the words in the butter trade, as testified by these witnesses, is the meaning of the words taken in their ordinary sense under the circumstances to which they applied. The butter had been shipped to the defendants to be paid for at a much higher price than was fixed by the telegram. They had refused to take it. It was held by the common carrier, who had a lien upon it for the transportation charges. These must be paid by the party holding the

bill of lading before he could obtain the goods. The defendants had made a large advancement on the goods. They had the bill of lading. The parties had not agreed concerning the disposition and settlement for the goods. The carrier desired to have the goods removed. The plaintiffs sent the telegram in question to the freight agent, telling him to let the defendants have the goods at seventeen cents per pound "net to us," or to reship them to other parties. Under the circumstances, this could only mean that the goods were to be sent to other parties unless the defendants took them at the price named, without deductions. Net means "free from charges or deductions," Webster's Dictionary; "obtained after deducting all expenses," Standard Dictionary. "Net to us" in the telegram, under the circumstances under which it was sent, which were known to all parties, could mean only that the price given was to be seventeen cents per pound free from all charges and deductions. This, in substance, is what the witnesses said was their meaning in the trade.

A general objection to the reading of the depositions, upon the ground that the notice for taking them was insufficient, was properly overruled. It appears that eleven days' notice was given, and it is not claimed that this did not give time to reach the place where they were taken or to arrange by mail to be represented by local attorneys. So far as appears by the record, the court's discretion in receiving the depositions was not improperly or unreasonably exercised.

Several of the defendants' assignments of error relate to the court's refusal to charge as requested by them. All the requests so refused related to the telegrams and letters which had passed between the parties before closing the original contract for the butter. As it was agreed that a new contract was made under

entirely different circumstances than existed between the parties at the time the original contract was made, the requests were properly refused. They could have no bearing upon the meaning of the new contract.

The court properly refused to set aside the verdict. There was evidence before the jury sufficient to warrant a verdict for the plaintiffs.

There is no error.

In this opinion the other judges concurred.