WRIGHT, APPELLANT, *v.* BOWLUS ET AL., RESPONDENTS.

(No. 4,596.)

(Submitted January 7, 1922. Decided February 20, 1922.)

[205 Pac. 210.]

*Real Estate Brokers—Commissions—Abandonment of Contract of Purchase—Promissory Notes—Failure of Consideration.*

Real Estate Brokers—When not Entitled to Commissions.
    1. As a general rule, a real estate broker is not entitled to commissions until he has accomplished the object of his employment, no matter how meritorious his services may have been, unless the contract provides otherwise.

Same—Sale Price "Net" to Owner—Definition.
    2. Where a broker agrees to sell lands at a certain sum "net" to the owner, the broker is not entitled to any commissions unless the amount received by the owner exceeds the specified net price, "net" meaning that which remains after deducting all charges and outlay.

Same—Commissions—Abandonment of Contract of Purchase—Promissory Notes—Failure of Consideration.
    3. A broker was employed to sell lands at a given price per acre net to the owner, the broker being allowed to retain half of the down

---

2. Nature of contract by which owner agrees to pay another all over specified sum for procuring a sale, see note in 35 L. R. A. (n. s.) 116.

[62 Mont. 322.]

payment as part of his commissions and the owner making a conditional note for the balance, payable when the remainder of the purchase price should be paid. No further payments were made by the purchaser, his contract of purchase being abandoned by him. *Held,* that, the owner not having received anything in excess of the net price fixed by the contract, the broker could not enforce payment of the note.

*Appeals from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by Edmund Wright against Mrs. Hattie A. Bowlus and another. From judgment for defendants and an order denying new trial, plaintiff appeals. Affirmed.

*Messrs. Cheadle & Cheadle,* for Appellant, submitted a brief; *Mr. E. K. Cheadle* argued the cause orally.

*Messrs. Blackford & Huntoon,* for Respondents, submitted a brief; *Mr. J. C. Huntoon* argued the cause orally.

Counsel contends that no testimony could be given in regard to the conditions attaching to the delivery of the promissory note for the reason that it tends to vary the terms of the written instrument. However, it has been held that it is permissible to show conditions attaching to the giving of a promissory note for the purpose of disclosing the intention in delivering it, and that while there might be a physical delivery of the paper itself, it would not become a valid obligation until the performance of the condition under which it was delivered, and a failure of that condition to be performed rendered the note void and of no effect and no action could be maintained. (*Benton* v. *Martin,* 52 N. Y. 570; *Burke* v. *Dulaney,* 153 U. S. 228, 38 L. Ed. 698, 14 Sup. Ct. Rep. 816 [see, also, Rose's U. S. Notes]; *Higgins* v. *Ridgway,* 153 N. Y. 130, 47 N. E. 32; *McCormick Harvesting Mach. Co.* v. *Faulkner,* 7 S. D. 363, 58 Am. St. Rep. 839, 64 N. W. 163; *Ware* v. *Allen,* 128 U. S. 590, 32 L. Ed. 563, 9 Sup. Ct. Rep. 174 [see, also, Rose's U. S. Notes]; *Smith* v. *Mussetter,* 58 Minn. 159, 59 N. W. 995; *Westman* v. *Krumweide,* 30 Minn. 313,

15 N. W. 255; *Mendenhall* v. *Ulrich,* 94 Minn. 100, 101 N. W.
1057; *Oakland Cemetery Assn.* v. *Lakins,* 126 Iowa, 121, 101
N. W. 778.)

The word "net" to the seller has been in many cases con-
strued to mean that the commission is to be paid out of the
amount received through the agent only in case the full amount
of the purchase price is paid and no right to any commission
arises until that has been done. (*Wolverton* v. *Tuttle,* 51
Or. 501, 94 Pac. 961; *Munroe* v. *Taylor,* 191 Mass. 483, 78
N. E. 106; *Burnett* v. *Potts,* 236 Ill. 499, 86 N. E. 258; *Ford*
v. *Brown,* 120 Cal. 551, 52 Pac. 817; *Beatty* v. *Russell,* 41
Neb. 321, 59 N. W. 919.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action on a promissory note, dated August 23,
1913, for $900, executed by the defendants, payable to the
plaintiff on or before March 15, 1914, with interest at six
per cent per annum and reasonable attorney's fees. Across
the face of the note in red ink the following appears: "Not
transferable. Commission note on sale to Taylor Rutter." By
answer filed the defendants admitted the execution of the
note, but alleged that it was given as evidence of the balance
of commissions agreed to be paid the Wright Land & Invest-
ment Company, a corporation, on the sale of certain real estate,
upon conditions which were never performed, evinced by the
indorsement across the face of the note, made before its de-
livery, and therefore that the note is not binding or enforce-
able.

Upon issue joined, the case was tried by the court, a jury
being expressly waived by stipulation, and resulted in find-
ings and judgment in favor of the defendants. The plaintiff
has appealed from the judgment and the order overruling his
motion for a new trial.

Although several errors are assigned, but one question is
presented by them, namely: Is the note in suit enforceable as
against the defendants?

Execution of the note having been admitted by defendants' answer, the court at once properly put the defendants upon their defense. From the evidence it appears that the defendant Hattie A. Bowlus was the owner of about 1,000 acres of ranch property in Fergus county, a portion of which was improved. In August, 1913, C. George Bowlus, as the agent of his wife, Hattie A. Bowlus, listed this land for sale with the Wright Land & Investment Company (hereinafter referred to as the company) to net Mrs. Bowlus $38 per acre, the company to receive as its commission any additional amount for which the land was sold. Subsequently, on August 25, 1913, the company addressed a letter to the defendant C. George Bowlus at Scribner, Nebraska, wherein it is stated: "We have just made a deal * * * for the sale of the south 280 acres of your land. * * * The price we are getting for this land is $40 an acre. We are taking $1,000 in cash on the signing up of the papers and the balance of the purchase price is to be paid in cash on the first day of March, 1914, with interest at six per cent from date. Of the $1,000 cash payment we mentioned, we must have $500 and a conditional note for the balance of our commission, when the next payment is made on the 1st of March next. * * * We have a conditional deposit on this proposition pending a ratification by you and if this plan is satisfactory, we will make up the papers as soon as you wire, and we have your O.K. and send them on to you for signature, together with the $500 payment." To this letter the defendant C. George Bowlus made reply by telegram dated August 28, 1913, reading in part as follows: "Your letter confirming sale two hundred eighty acres received and same accepted. Owner changes price on balance of farm to forty dollars per acre net to her." And on the same date as the telegram the defendant C. George Bowlus wrote a letter from Scribner, Nebraska, to the company reading in part as follows: "As I wrote you some time ago, Mrs. Bowlus said she would not sign deed less than $38 per acre—and she rather upbraided me for cutting the price

in my last letter—but she will sign the papers closing on this tract of 280 acres. As for the balance of the farm, 720 acres, she wants $40 net to her. This will be well worth $40, too, as it carries with it all the buildings and a telephone line that cost $250, and more of the land in proportion to the whole is broke out and farmed. You should have no trouble in getting this price net to her for the balance and I trust you may be able to move it soon at these figures. Send on the papers for signatures and draft for $500. We will sign conditional note to you for the balance of Com. due you on this sale. I am expecting to leave for Alberta before long via Montana, and hope to see you and also Mr. Boyer, tenant, and arrange matters in regard to possession of the bal. of the farm if prospective purchaser desires possession.''

Following this exchange of communications, the defendant C. George Bowlus went to Lewistown, Montana, and on the afternoon of September 11, 1913, met the plaintiff, Edmund Wright, at his office in Lewistown. A form of contract for the sale of the 280 acres of land had been prepared by the company, dated August 23, 1913, which was already executed by the prospective purchaser, Taylor Rutter. The defendant C. George Bowlus then signed it (September 11, 1913), and it was then forwarded to Scribner, Nebraska, for the signature of Mrs. Bowlus, who later executed and returned it to the company. At the time Mr. Bowlus signed the contract, Mr. Rutter was not present, and Mr. Bowlus never saw him. The note in suit had been prepared and dated August 23, 1913, and, after making the red ink indorsement across the face thereof, was, on September 11, 1913, executed by C. George Bowlus for himself and his wife jointly, and delivered to the plaintiff.

At that time the company delivered to C. George Bowlus a draft for $500, payable to Hattie A. Bowlus, and took a receipt from C. George Bowlus for $500 on account of commission to be paid the company on the sale, the aggregate of these two amounts, $1,000, representing the entire amount

of the initial payment made by the purchaser of the land, Taylor Rutter, although from the record it appears that, in order to consummate the transaction, the company had received from the purchaser but $50 down in cash and his promissory note for $950.

In explaining the reason why the note was executed to the plaintiff rather than to the company, the plaintiff testified: "This note upon which this action is brought, while reading to me personally, is in behalf of the Wright Land & Investment Company, which is owned by myself. It represented the balance of the commission due to the Wright Land & Investment Company, but was taken in my name." It appears that the defendants performed their part of the contract of sale of the land in all particulars, but that the purchaser, Taylor Rutter, defaulted, abandoned the land and the contract, and that the only portion of the purchase price agreed to be paid ever made by Rutter was the initial payment for which he was credited with $1,000 at the time of the execution of the contract to purchase. It appears that the promissory note taken and accepted by the company at the time of entering into the contract with Rutter for the sum of $950, and which, as between the company and the defendants, was treated as cash, was, after considerable delay, effort and difficulties, collected by the company. The contract between the company and the defendants as shown by the correspondence, is plain, and oral evidence admitted without objection merely amplified defendants' contention.

Irrespective of the effect of the indorsement on the note, it is plain from the listing of the property for sale and subsequent correspondence amounting to a brokerage contract, that Hattie A. Bowlus was to have through the company $35 per acre net for this land, and, as the sale was never consummated by payment made to the company, there is no obligation on Mrs. Bowlus' part to pay the balance of the commission represented by the note in suit.

As a general rule a broker is not entitled to compensation [1, 2] until he has performed the undertaking assumed by him; and, in the absence of any contrary provision in his contract, it matters not how great have been his efforts nor how meritorious his services; if he is unsuccessful in accomplishing the object of his employment, he is not entitled to compensation. (9 C. J. 588.) And obviously, where a broker's commissions are expressly conditioned upon the consummation of contract to be negotiated, it must be performed by the parties thereto to warrant the broker in recovering his remuneration. (4 R. C. L. 311.) The word "net" to the owner in such contract means that the broker's commission is to be paid out of the amount received through him only upon payment of the full amount of the purchase price. The vendee must carry out his contract to purchase as to payment, and the overplus above the "net" to the owner is the broker's commission. "Where one states to a broker that he will sell land for a certain sum 'net' to him, the broker on procuring a purchaser is entitled to no commission unless the sum received exceeds the specified net price; the word 'net' meaning that which remains after deducting all charges and outlay." (*Wolverton* v. *Tuttle,* 51 Or. 501, 94 Pac. 961; see, also, *Floral Creamery Co.* v. *Dillon,* 83 Conn. 65, 75 Atl. 82; *Munroe* v. *Taylor,* 191 Mass. 483, 78 N. E. 106; *Burnett* v. *Potts,* 236 Ill. 499, 86 N. E. 258; *Ford* v. *Brown,* 120 Cal. 551, 52 Pac. 817; *Beatty* v. *Russell,* 41 Neb. 321, 59 N. W. 919.)

As applied to the case before us, the use of the word "net" [3] in the brokerage agreement meant that the broker would be entitled to anything received on sale of the lands in excess of the sum named as "net" to the owner, and, nothing having been received by the broker in excess of such "net" amount due the owner, the broker is not entitled to commissions, even though, at the time of the execution of the brokerage contract, or shortly thereafter, the commissions to be paid were represented by a promissory note of character such as that given in the case before us. It seems plain that, if nothing is received

under such a contract in excess of the "net" sale price, the broker can make no valid claim for commission. The note sued upon represents the amount that was to be paid by Rutter in excess of the *net* amount of thirty-five dollars per acre due the owner; and it is clear that it was not to be due or collectible until final payment for the land made by the purchaser. The giving of the promissory note does not change the rule as between the parties. On its face, it appears to be a commission note, and not transferable. It gave to neither the company nor the plaintiff any greater rights than were possessed under the brokerage contract. Both were part of the same transaction, the obligation of the note depending upon performance of the contract for the sale of the land, and they must be considered and construed together. The company, in advising the defendants of the fact that the sale had been made, and asking to have the listing terms of sale varied so that, as to the tract of land in question, Mrs. Bowlus would receive thirty-five dollars per acre net, instead of thirty-eight dollars per acre net, and the company allowed and paid on account one-half of the $1,000 paid down, and be given a *"conditional note"* for the payment of the balance of its commissions "when the next payment is made on the 1st of March next" (afterwards on September 11, 1913, the date of the execution of the note changed to March 15th), and acceptance thereof by defendants, made plain the terms of the brokerage contract on the sale of this tract of land to Taylor Rutter. The conditions of the contract have not been performed, and the plaintiff is without right of recovery. He stands in no different position than the company.

It is noteworthy that, on quite a similar state of facts, this court, in the case of *Wright Land & Investment Co.* v. *Even,* 57 Mont. 1, 186 Pac. 681, came to a like conclusion; it being there held that a real estate broker under contract with the land owner to sell the latter's property for a commission is not entitled to commission until the broker has produced a

buyer, ready, willing, and able to complete the purchase in accordance with the terms agreed upon.

The findings of the court are amply supported by the evidence, and the judgment should not be disturbed. Accordingly the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and HOLLOWAY concur.