### WILLARD et al. v. PRESTON et al.
#### No. 10899.

Circuit Court of Appeals, Eighth Circuit.

Nov. 29, 1937.

Winthrop B. Lane, of Omaha, Neb. (Arthur R. Wells, Paul L. Martin, and Casper Y. Offutt, all of Omaha, Neb., on the brief), for appellants.

Edgar M. Morsman, III, of Omaha, Neb. (Mr. Edgar M. Morsman, Jr., of Omaha, Neb., on the brief), for appellees Walter G. Preston and others.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy, G. L. De Lacy, E. J. Svoboda, and R. E. Svoboda, all of Omaha, Neb., on the brief), for appellees Robert L. Robison and others.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellants, as plaintiffs below, brought this action at law to recover compensation for services in negotiating the sale of certain capital stock of the Bankers Reserve Life Company of Omaha owned by appellees. Plaintiffs are members of the New York Stock Exchange and the defendants own more than 95 per cent. of the stock of the Bankers Reserve Life Company of Omaha.

We shall refer to the parties as they appeared below.

At the close of plaintiffs' case, the court sustained the motion of defendants to direct a verdict in their favor, and from the judgment entered thereon plaintiffs prosecute this appeal.

The petition alleged that on or about January 20, 1933, the plaintiffs entered into an oral agreement with the defendants whereby it was agreed that, if the plaintiffs could find a purchaser for this stock on terms and conditions acceptable to the defendants, the defendants would pay as compensation a commission equal to 6 per cent. of the agreed purchase price; that pursuant to this oral agreement plaintiffs interested the American National Insurance Company of Galveston, Tex., in the purchase of the stock, and after considerable negotiating obtained from that company an offer in writing for the purchase of the stock, a copy of the written offer being attached to and made a part of the petition; that the offer was submitted to the defendants and accepted by them on the 11th of February, 1933; that at the time the offer of the American National Insurance Com-

pany was accepted, plaintiffs 'delivered to the defendants, or their representative, a form of agreement covering their compensation, which agreement was accepted and approved on behalf of the defendants; and "plaintiffs allege that this written agreement merged all prior oral agreements as regards commissions." It is alleged that the plaintiffs performed all their duties and obligations under "said contract," and are entitled to payment of the agreed compensation. They asked judgment for $216,-000.

In our view, the controlling question on this appeal is whether it was error for the court to direct a verdict for the defendants.

The written offer to purchase the stock secured by plaintiffs from the American National Insurance Company bears date February 11, 1933, and so far as here material reads as follows:

"Subject to the verification and approval of the financial statement of The Bankers Reserve Life Company of Omaha, Nebraska, as of December 31, 1932, American National Insurance Company agrees to purchase the capital stock of the company for a consideration of Three Million Six Hundred Thousand ($3,600,000.00) Dollars, upon transfer of the stock, said amount to be paid as follows:

"First. Cash, $2,000,000.00.

"Second. Participation Certificates in the amount of $1,600,000.00. Participation Certificates are to mature from the date of the transfer of the stock at the rate of $250,000.00 semi-annually, bearing interest at 5%, and are payable out of net profits of the business and assets of The Bankers Reserve Life only. At the option of the American National Insurance Company, these certificates can be taken up in advance of maturity date. Details of the operating charges against The Bankers Reserve business to be agreed upon later, but are not to exceed 10% of the premium income, plus premium tax, plus reasonable administration charges of the handling of the assets taken over.

"Yours very truly,

"American National Insurance Company,

"By S. Moody, Vice President

"Accepted, provided not less than 95% of the capital stock will be delivered and paid for as above at proportionate value.

"R. L. Robison, V. Pres.

"R. R. Wagner.

"Representing at least 95% stock ownership of The Bankers Reserve Life Company of Omaha, Nebraska."

At the same time and apparently as a part of the same transaction, so far as the parties to this action are concerned, there was executed the contract upon which this action is based. This contract reads as follows:

"Executive Office

"From Hotel Galves

"Galveston, Texas.

"February 11, 1933.

"Mr. R. L. Robison,

"Mr. R. R. Wagner,

"Buccaneer Hotel,

"Galveston, Texas.

"Gentlemen:

"We are informed of the contents of letter of American National Insurance Company of Galveston, Texas, to you dated February 11, 1933. We, F. A. Willard & Company, agree to purchase at par $250,-000.00 of the 5% participation certificates, described therein, being the $250,000 of such certificates first maturing, when such certificates are issued, provided, first, that the proposal made by the American National Insurance Company is immediately accepted by the stockholders of The Bankers Reserve Life Company of Omaha, Nebraska, second, that the financial statement of such Company as of December 31, 1932, upon verification, is found by us to be correct and is by us approved, and, third, that such participation certificates, when issued, are acceptable to us.

"It is understood that the compensation accruing to this Company for the services performed and to be performed by it in behalf of the stockholders of The Bankers Reserve Life Company in effectuating the transaction between them and American National Insurance Company is 6% of the gross selling price, cash and certificates, paid to them by American National Insurance Company. This sum is payable by such stockholders simultaneously with the consummation of the proposal of the American National Insurance Company, $100,000 in certificates from among the certificates last maturing, the balance approximately $116,000 to be paid in cash.

"This payment of 6%, above referred to, shall constitute payment in full for our services, without any claim for additional fees whatsoever, and we agree to further protect you from any claims for commissions or fees for services that might

be made for Harry Henemier in connection with this transaction.

"Should the stockholders of The Bankers Reserve Life Company desire to dispose of the $750,000 of certificates next maturing, they agree to give this Company first opportunity of disposing of them, so far as your personal ownership of these certificates is concerned.

"Very truly yours,
"F. A. Willard & Company,
"40 Wall, New York.
"By Amos R. Poole.
"Accepted and Approved:
"[Signed] R. L. Robison, V. Pres.
"[Signed] R. R. Wagner.

"For themselves, as stockholders of The Bankers Reserve Life Company of Omaha, Nebraska, and as Agents of other stockholders, total ownership represented, 95% of total."

Following the execution of these instruments, the American National Insurance Company sent its actuaries to Omaha to examine the records of the Bankers Reserve Life Company for the purpose of verifying its December 31, 1932, statement, on which the negotiations were based. After such examination by its actuaries, the American National Insurance Company declined to proceed further with the purchase of the stock. They criticized the statement in that the surplus listed at $1,941,895.31, included some $321,000 belonging to certain policyholders, so that the entire surplus did not belong to the stockholders. It may be observed in this connection that the report did not set up this item as belonging to stockholders exclusively, but, in fact, in other portions of the report it specifically appeared that dividends due or to become due to policyholders were included therein. There was some difference of opinion as to the proper method or form of setting up these items on the books of the company, or in its reports, but the criticism goes to the method used, rather than to any claim of actual misrepresentation or incorrectness; but, in any event, this was the reason given by the American National Insurance Company for declining to consummate the purchase.

The brief of plaintiffs abounds in statements of abstract principles of law which are more or less academic in character, because in this case they base their right of recovery upon a specific written contract, which they allege "merged all prior oral agreements," and that they "have fully performed all of their duties and obligations under said contract." It is important to bear in mind that plaintiffs allege full performance on their part, not that performance was waived by the defendants or excused or prevented by reason of any acts of the defendant.

To entitle a broker to compensation, he must accomplish what he has undertaken by his contract of employment, and, generally, speaking, especially when full performance is alleged and no claim is made in the pleadings that full performance was prevented by any acts of the defendant, nothing short of accomplishment is sufficient to constitute performance. Crowe v. Trickey, 204 U.S. 228, 27 S.Ct. 275, 51 L.Ed. 454. In other words, he is not entitled to compensation for unsuccessful efforts. True, it is generally sufficient to entitle a broker to compensation that he produce a person who is ready, willing, and able both to accept and live up to the terms offered by his principal. If he produces such a person, he is entitled to compensation, even though his employer refuses to perform, or even though the transaction fails by reason of the fact that the customer refuses to perform if that refusal is because of a material misrepresentation made by the employer. Dotson v. Milliken, 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768. But here there is no claim in the pleadings that the transaction failed because of any material misrepresentation, nor is there any proof sustaining such a contention. Where the broker's compensation is expressly conditioned upon the consummation of the contract, and there is no claim that performance of the contract was prevented by the arbitrary action of the employer, then the broker cannot recover unless and until such contract is performed. Guionnet v. Specht (C.C.A.3) 297 F. 871; Cobb v. Warren, 64 Mont. 10, 208 P. 928; Wright v. Bowlus, 62 Mont. 322, 205 P. 210; Pfanz v. Humburg, 82 Ohio St. 1, 91 N.E. 863, 29 L.R.A.(N.S.) 533.

Plaintiffs procured a prospective purchaser. It was recognized by the parties that no effective contract of purchase had been negotiated. The instrument signed by the American National Insurance Company and accepted by the defendants is referred to in the contract for commission as "the proposal made by the American National Insurance Company." The offer was specifically "subject to the verification and

approval of the financial statement." The proposal fixed no time within which the transaction should be completed and the consideration paid. It provided that part of the consideration should be paid in "participation certificates," which were to be "payable out of net profits of the business and assets of the Bankers Reserve Life only." Operating charges were to be agreed upon later. Net profits were not defined. Then the acceptance was conditioned that not less than 95 per cent. of the capital stock should be delivered and paid for. The instrument was not a contract of purchase and it is quite apparent that the parties at the time recognized it as only a proposal containing conditions marking it at most as an optional contract. The option not having been exercised, plaintiffs were not, under their contract, entitled to recover. Crowe v. Harmon, 204 U.S. 241, 27 S.Ct. 280, 51 L.Ed. 461; Crowe v. Trickey, 204 U.S. 228, 27 S.Ct. 275, 51 L.Ed. 454.

But it is argued that the defendants accepted the American National Insurance Company as a purchaser, and hence, the purchaser was conclusively presumed to be ready, able, and willing to buy and the seller should be estopped from alleging anything against the broker's claim except fraud. But the petition is not based upon any claim of estoppel but upon allegations of complete performance by the plaintiffs. In any event, the fact that the defendants consented to entering into this conditional proposal or optional contract to purchase cannot be construed as a waiver of the terms of their contract with the plaintiffs. Mitchell v. Derby Oil Co., 117 Kan. 520, 232 P. 224; Warnekros v. Bowman, 14 Ariz. 348, 128 P. 49, 43 L.R.A.(N.S.) 91.

Referring to plaintiffs' compensation, the contract itself provides that, "This sum is payable simultaneously with the consummation of the proposal of the American National Insurance Company, $100,000 in certificates from among the certificates last maturing, the balance approximating $116,000 to be paid in cash." The proposal was not consummated; no part of any stated purchase price was ever paid. Plaintiffs could not have received the $100,000 in certificates except on consummation of the sale, and the compensation was payable "simultaneously with the consummation of the proposal." Under their contract with the defendants, performance was made a condition precedent to their right of recovery.

We conclude that under the undisputed evidence plaintiffs were not entitled to recover, and the court correctly directed the jury to return a verdict in favor of the defendants. The judgment appealed from is therefore affirmed.