## MARGARET J. BARROWS *vs.* PATRICK BOHAN.

A brother and sister purchased a building lot together for $1,050, upon an oral agreement that they should pay for and own it equally—taking only a contract for a deed. They made payments from time to time until all was paid but $265, when, for the convenience of all the parties, a deed was made to the brother alone, who gave his note for the $265 and a mortgage back, it being understood that her rights were not to be affected by his taking the title. This note was afterwards paid by them jointly and the mortgage discharged. Afterwards they united in building a tenement house on the lot, for which they jointly paid, except a balance of $4,000, for which the brother gave his note and a mortgage—it being agreed that the mortgage should be a burden upon them both and that the rents and profits should be applied to pay the mortgage debt. Held that the brother's title was subject to a resulting trust in favor of the sister, to the extent of half the value of the premises.

A resulting trust is founded upon a presumed intention of the parties. Where there is an express parol agreement to the same effect as the implied one, it does not defeat the resulting trust.

BILL IN EQUITY for a sale of certain real estate claimed to be owned by the parties jointly, and for an injunction; brought to the Superior Court in New Haven County, and heard before *Granger, J.* The following facts were found by the court.

Some time prior to the 19th day of October, 1868, the petitioner made a parol contract with certain parties for the purchase of a building lot for $1,050, and paid them at different times on the contract the sums of $150, $100, $50, and $50. But finding herself unable to make payments upon the lot as fast as was desired, she proposed to the respondent, who was her brother, to unite with her in the payment of the sums remaining due, and it was agreed that he should do so and that they should each pay for, and own when paid for, one undivided half of the lot, and both thereafter made payments in fulfillment of the agreement. The precise amount that each paid cannot now be ascertained, except so far as appears by their agreement.

On the 19th day of October, 1868, there remained unpaid a balance of $265, and the vendors desiring to close the

transaction, agreed with the petitioner and her brother that a deed of the lot should be given to him and a mortgage taken back for the $265. A warranty deed was accordingly given by them to the respondent, upon the agreement and understanding between him and his sister that her rights in the property should not be in any way prejudiced thereby; and at the same time the respondent gave a mortgage upon the property to secure his own note of $265, which note was paid and the mortgage discharged December 7th, 1868, by money furnished by the petitioner and respondent, and so far as appears each furnished an equal amount in pursuance of the original agreement between them.

After the mortgage was discharged, the petitioner and respondent united in the construction of a six tenement dwelling house on the lot, each of them agreeing to pay one-half the cost of it. And each, in pursuance of the agreement, furnished money from time to time in the erection of the house, but the amounts so furnished by each the court cannot determine, except so far as appears by the agreement.

There was raised about $4,000 on a mortgage on the property given by the respondent, which was used in the erection of the house. Most of the contracts and bills for materials were in the name of the respondent, pursuant to an understanding between the petitioner and him that such should be the manner of doing the business.

After the house was finished, in the spring of 1869, the petitioner and respondent had a reckoning together, of the amounts each had paid towards the purchase of the lot and the erection of the house; and it was then found, as was the fact, that each had paid out of their own means, above the sum raised by the mortgage, about $700, and it was thereupon agreed between them that each was the owner of an undivided half interest in the property, and that the mortgage, which had then been reduced to exactly $4,000, should be a common burden on both of them, and that the rents should, after the payment of taxes and necessary repairs, be applied to the reduction of the mortgage debt. And it was further agreed between them that the respondent

should give the petitioner a deed of one undivided half of the property, subject to the mortgage. A deed in pursuance of this agreement was afterwards, at the request of both parties, prepared by an attorney, but was never executed by the respondent, though he has been frequently requested and has frequently promised so to do.

The mortgage of $4,000 still remains unpaid. The interest is paid to October 29, 1873, but the mortgage debt has not been any further reduced, and is the only incumbrance on the property. The property is now worth $6,500.

The respondent objected to the evidence to prove the foregoing facts, the same being in parol, but the court overruled the objection, the respondent excepting.

There was an agreement at the time of the erection of the house that each should have the privilege of occupying a tenement in it. Upon its completion the petitioner occupied one of the tenements at an agreed rent, and has ever since so occupied, under an agreement that the rent should go towards the reduction of the mortgage debt. The respondent boarded for a while with the petitioner, but has not otherwise occupied the house; but all of the tenements, except that occupied by the petitioner, have been rented, and the rents during the first year were mostly paid to the petitioner, but since that time have been mostly collected by the respondent. The petitioner has never surrendered possession of the premises.

Upon the foregoing facts the respondent's counsel claimed:

1. That the law was so that the petitioner had no legal or equitable interest in the real estate.

2. That the law was so that if she had any legal or equitable interest, then it was only such interest as $350 bears to $1,050.

3. That the law was so that whatever moneys were advanced by her for the erection of the house, could not be taken into account in ascertaining the amount of her interest in the real estate, if any she had.

4. That the law was so that whatever money she advanced to pay the mortgage debt of $265 could not be taken into

account in ascertaining the amount of her interest in the real estate, if any she had.

5. That by reason of the tenancy of the petitioner, the law was so that she was estopped from denying the respondent's title.

But the court overruled each of these claims, and passed a decree vesting in the petitioner an undivided half of the property, subject to the payment of half the mortgage debt of $4,000.

The respondent brought the record before this court by a motion in error.

*Alling,* for the plaintiff in error.

1. The case of the petitioner rests upon the doctrine of resulting trusts in real estate, established by parol evidence. In *Boyd* v. *McLean,* 1 Johns. Ch., 582, Chancellor KENT says: " If the point were *res integra,* I should be inclined to agree with Sir Thomas Clarke, that such evidence is too dangerous in its consequences. The cases uniformly show that the courts have been deeply impressed with the danger of this kind of proof, as tending to perjury and the insecurity of paper title." The law of resulting trusts rests entirely upon the theory, that where a purchaser of real estate has actually paid the purchase price therefor, but the legal title is conveyed to some other person, and there is no other explanation of the transaction, the party advancing the money is the party beneficially interested in the real estate, and that there has been, so to speak, a conversion of his money into land. The trust arises entirely by operation of law, from the single fact of the ownership and payment of the money at the time of the change of the legal title. *Pembroke* v. *Allenstown,* 21 N. Hamp., 107 ; *Moore* v. *Moore,* 38 id., 382 ; *Bruce* v. *Rooney,* 18 Ill., 67.

2. The case shows that, if there was any trust at all, it arose out of the confidence of the brother and sister in each other, and upon the express parol agreement, on his part, that he would hold half the title in trust for her. The trust, therefore, was an express trust, and void by the statute of

frauds. Proof of an express trust, though by parol, will defeat a resulting trust. Where the trustee is expressly directed by the trust, though in parol, to take and hold the conveyance in his own name, no implied trust arises. *Ring* v. *McCoun*, 10 N. York, 271; *Sturtevant* v. *Sturtevant*, 20 id., 40; *Hubbard* v. *Goodwin*, 3 Leigh, 519; *Ratliff* v. *Ellis*, 2 Clark (Iowa), 59. "A resulting or implied trust is usually created by the purchase of land with the money of one person, in the name of another, without the consent of the owner of the money." *Sheldon* v. *Harding*, 44 Ill., 68; Perry on Trusts, § 98.

3. Where two persons contribute, from their respective funds, towards the purchase of real estate, and the legal title is conveyed to one only, and there is no express trust, it seems to be now well settled that a resulting trust arises in favor of the party not receiving the legal title, according to the amount of the money by him furnished, and no farther; and this amount must be clearly proved. *Botsford* v. *Burr*, 2 Johns. Ch., 405; *Purdy* v. *Purdy*, 3 Maryl. Ch. Dec., 547, 551; *Baker* v. *Vining*, 30 Maine, 121; *Kelley* v. *Jenness*, 50 id., 463. But it is indispensable to the creation of such a trust, that the money should be paid at the same time that the deed is taken and the legal title vests in the grantee; a subsequent payment is immaterial. Perry on Trusts, § 133; *Botsford* v. *Burr*, supra; *Purdy* v. *Purdy*, supra; *Buck* v. *Swazey*, 35 Maine, 41; *Case* v. *Codding*, 38 Cal., 191; *Frederick* v. *Haas*, 5 Nev., 389; *Francestown* v. *Deering*, 41 N. Hamp., 438; *Howell* v. *Howell*, 15 N. Jer. Eq., 76; *White* v. *Carpenter*, 2 Paige, 238, 241; *Whiting* v. *Gould*, 2 Wis., 552. "The money must be paid at the time of the vesting of the title, or if not, and there are notes, the notes must be separately executed." *Gee* v. *Gee*, 2 Sneed, 396, 404. If one of two joint purchasers completes the purchase by giving his own note, on which he alone is liable, for the unpaid purchase money, no trust results to the other to the extent that the amount of the note bears to the whole purchase price. Where the proportion paid cannot be ascertained, or the sum paid is left uncertain, no trust arises by

operation of law. This necessarily results from the principle that the law alone, independent of the agreement of the parties, fixes the relative quantity of interest, from the proved amount of payment, and if no amount is proved, the law can presume no resulting interest; and from the further principle that the law of resulting trusts is to be construed with great caution, as it is almost in direct antagonism to the statute of frauds, and tends to the insecurity of titles derived under the most solemn instruments. Browne on Stat. Frauds, § 86; 2 Sugden on Vendors, 908. The subsequent refusal of the respondent to execute a deed, whether fraudulent or not, can not have any effect to create a resulting trust on the 19th of October, 1868. The trust was then created or never. If there was no fraud then, (and none is claimed,) a subsequent breach of a parol agreement would have no effect to create any resulting trust. *Robertson* v. *Robertson,* 9 Watts, 42; *Barnet* v. *Dougherty,* 32 Penn. S. R., 371; *Kellum* v. *Smith,* 33 id., 165; *Nixon's Appeal,* 63 id., 279.

*Fowler,* for the defendant in error.

CARPENTER, J. Although in form this record presents several questions, yet in substance there is but one; and that is, what interest has the petitioner, if any, in the real estate in controversy? Or, to state it in another form, is there a resulting trust? and, if so, to what extent?

That the petitioner paid a portion of the purchase money, as purchaser, before the deed was given, is not denied. The law raises a trust therefore in her favor to some extent, unless such trust is defeated by the parol agreement between the parties. The whole doctrine of resulting trusts rests upon a presumed agreement between the parties. When the actual agreement between the parties is identical with the agreement which the law will imply from the circumstances, as in this case, there can be no conflict, and no danger that the real intentions of the parties will be defeated by operation of law. Such an agreement, therefore, will not defeat a resulting trust. *Booth's Appeal from Probate,* 35 Conn., 165.

The extent of her interest remains as the principal question in the case.

It appears from the record that the parties advanced $785 for the purchase of a building lot. Pursuant to an understanding between them, the lot was conveyed to the respondent, and he gave his note for the balance of the purchase money, $265, and secured it by a mortgage of the premises. They subsequently paid the mortgage, and erected a dwelling house upon the lot. It is found substantially that each party paid one-half of the entire cost of the lot and one-half of the amount paid towards the dwelling house, leaving a mortgage on the premises of $4,000. The Superior Court passed a decree vesting the title to one undivided half of the property in the petitioner, and the respondent filed a motion in error.

The title to the premises, equitable as well as legal, vested when the deed was delivered to the respondent. For the purpose of ascertaining the state of the title therefore we must look at the transactions between the parties before and at that time. Subsequent transactions have no bearing upon the question of title, except as they tend to show the intention of the parties when the title vested. In respect to the amount paid before the delivery of the deed, we think it is found with sufficient clearness and certainty that the petitioner paid one-half of it, which gives her a title to that extent. Whether she is entitled to one-half the property or not depends upon the view we take of the mortgage debt of $265. If that is to be regarded solely as the debt of the respondent, and the petitioner as not then responsible for any part of it, either to the respondent or the grantors, then she has no title in respect to that portion of the purchase money. But if it is to be regarded as her debt in part, she being either jointly liable, as between themselves, with the respondent, or liable to the respondent for one-half the amount, then her title to one-half of the property is complete.

Upon that point the finding is not quite as explicit as we could wish, and that has occasioned the only doubt we have had in the case. But on the whole we think enough is found to justify the inference that the parties at the time regarded

the balance of the purchase money as a debt for which they were jointly liable as between themselves. We think that is the fair import of the finding. If so, the effect of it, so far as this question of title is concerned, is the same as it would have been if she had paid her part of the balance in money. The original agreement between the parties was that " they should each pay for, and own when paid for, one undivided half of said lot." The deed was given to the respondent upon the agreement and understanding between them that her rights in the property should not be in any way prejudiced thereby; and the mortgage was paid with funds furnished by the parties equally. To this may be added the fact that each paid, so far as it was paid, one-half the expense of erecting the building. Thus it clearly appears that the respondent himself regarded the petitioner as the owner of one-half of the property; and we may well imply an understanding from the facts stated that each was to pay one-half the mortgage.

The doctrine that a tenant is estopped from denying the title of his landlord has no application to the case. The agreement under which the petitioner occupied a part of the premises contains no acknowledgment that the respondent was the sole owner of the premises, but is entirely consistent with her claim that she is a joint owner with him.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.