### CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. v. CONTINENTAL ILLINOIS NAT. BANK et al.

#### No. 5954.

Circuit Court of Appeals, Seventh Circuit.

Jan. 28, 1937.

Charles Aaron, Franklin Raber, and Ely M. Aaron, all of Chicago, Ill., for appellant.

M. Paul Noyes, David O. Dunbar, Stanley Rich, Andrew J. Dallstream, Francis X. Busch, Cassius M. Doty, and John C. Slade, all of Chicago, Ill., Hovey C. Clark, of New York City, and Alexander F. Reichmann, of Chicago, Ill. (David O. Dunbar, Donald S. Trumbull, Stanley Rich, and Cassius M. Doty, all of Chicago, Ill., of counsel), for appellees.

Daniel J. Schuyler, of Chicago, Ill., for Albert A. Sprague and Britton I. Budd, receivers of Chicago Rapid Transit Co.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

On June 28, 1932, upon a creditors' bill, the District Court appointed receivers for the Chicago Rapid Transit Company. Foreclosure proceedings instituted in the same court were consolidated with the receivership. On December 10, 1934, the court entered a decree of foreclosure, reserving jurisdiction to determine the question of priority of appellant's claim with respect to the mortgages foreclosed.

Appellant, a national bank, filed its claim in the consolidated cause to recover some $2,000,000 loaned the transit company, asserting that the facts were such as to result in an implied equitable lien in favor of appellant upon certain additions to and improvements of the borrower's property. The alleged right to priority was denied by appellees. The master in chancery to whom the claim was referred found and concluded that appellant was not entitled to priority but that its demand should be allowed as unsecured. Exceptions to the master's report were overruled, and the court confirmed the findings and conclusions. This appeal followed.

The claim arose out of transactions occurring prior to the receivership. The Rapid Transit Company is a utility corporation, operating certain of the transportation facilities of Chicago. Early in the year 1930, the parties then largely responsible for all local transportation matters in Chicago, in co-operation with committees representing various security holders of the several local companies including the transit company, devised and proposed a plan for reorganization and consolidation of the various companies as one. The city adopted an ordinance granting to the new company a franchise, authorizing it to acquire, own, and operate a comprehensive unified local transportation system in Chicago. The negotiations with reference to the plan and its adoption persisted throughout 1930 and a part of 1931. They did not meet with success and the project finally collapsed. The receivership followed.

While the proposal to reorganize and consolidate was pending, Mr. Griffin, treasurer of the transit company, applied to Mr. Waldeck, vice president of appellant, for a line of credit to his company in the amount of $2,000,000. He stated that the money would be needed from time to time to pay for capital expenditures for additions, extensions, and improvements, to be made in pursuance of the reorganization plan then thought to be well on its way to materialization. He said that an underwriting syndicate had been formed, by which Chicago banks and investment firms had undertaken to underwrite securities to the extent of $25,000,000 to be issued by the new company. Mr. Waldeck inquired as to repayment of any loan it might make, in the event delay should occur in perfecting reorganization or underwriting. Mr. Griffin replied that Mr. Insull had arranged with investment firms in such instance for issuance and marketing of temporary obligations to take care of such loans as the one applied for. Mr. Waldeck conferred with his associates and finally agreed to make the advancements. The bank extended credit upon the several promissory notes of the Chicago Rapid Transit Company as follows: December 29, 1930, $350,000; February 16, 1931, $650,000; March 4, 1931, $500,000; June 23, 1931, $500,000. Each note was renewed from time to time during the ensuing year so that at the time receivership intervened, the loan was represented by four notes aggregating $2,000,-000 payable on demand. When the receiver was appointed, the bank appropriated a deposit of $527,107.41, applying same upon one of the notes.

After advancing part of the loan, early in 1931, Mr. Waldeck suggested to Mr. Griffin that the bank desired a guarantee of the loan by the Commonwealth Edison Company or the Commonwealth Subsidiary Corporation. He was referred to Mr. Insull, who stated that the companies named could not properly guarantee the payment of the loan but that "I, or we, will see to it that the loan is paid." Thereafter the bank extended the remainder of the credit.

During the period when the loans were made, the transit company made capital expenditures for building new stations, platforms, cross-overs, a machine shop and for purchase of real estate for rights of way, for tracks and platform extensions, as contemplated in the then pending reorganization plan. Appellant claims that the evidence discloses that the proceeds of the loan made by it can be traced directly to these additions and betterments. This appellees deny.

It is the contention of appellant that the circumstances are such that the moneys loaned took on the character of trust funds and that it is entitled to an equitable lien upon the betterments and additions, as against the company and other creditors,

including the grantees in then existing mortgages upon the property of the transit company, given by it or its predecessors. This contention, in the end, must stand or fall upon the determination of whether the facts which we have outlined briefly are sufficient to bring into operation the equitable doctrine invoked.

The funds involved never became the res of an express trust. Is there an implied or constructive trust? A constructive trust arises where a person clothed with some fiduciary character, by fraud or other action upon his part, gains something for himself which, except for his act, he would not have procured and which it is inequitable for him to retain. If one obtains property by such arts, acts, or circumstances of circumvention, imposition, or fraud or by virtue of a confidential relationship and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, hold and enjoy the beneficial interest, the court, in order to achieve complete equity, will declare a trust by construction and convert the offending party into a trustee and order him to hold the same subject to a lien or direct him to execute the trust so as to protect fully the rights of the defrauded or deceived party. Kochorimbus v. Maggos, 323 Ill. 510, 154 N.E. 235; Perry on Trusts (6th Ed.) § 166; Kern v. Beatty, 267 Ill. 127, 107 N.E. 794; Allen v. Jackson, 122 Ill. 567, 13 N.E. 840. Courts of equity declare trusts of this character and recognize equitable liens because of what they deem fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. The constructive trust may be one resulting from actual fraud or one in which the existence of confidential relation and subsequent abuse of the confidence reposed produce a result abhorrent to equity. The burden of proof was upon appellant to prove that its claim is of this character.

We have examined the record with care, but deem it unnecessary to prolong a statement of the evidence beyond the recital above. We are of the opinion that the decision of the District Court was correct. The notes were simply unsecured promises renewed from time to time. They contained no reference to security, lien, condition or expectation. The credit was extended upon them in pursuance of a conversation between Mr. Waldeck and Mr. Griffin, in which the circumstances were reported to Mr. Waldeck; and he, after a conference with his associates, decided that the bank could "safely make some advancements." Later he talked with Mr. Insull and secured the latter's oral assurance that he would see that the notes were paid. He says he relied upon what Mr. Insull told him. On his own statement, therefore, the bank's reliance was not upon any implied lien or security but, in the first instance, upon the probability that the reorganization would be completed and that as a result thereof, the loans would be taken care of and, in the second instance, clearly, upon an oral statement of the man then deemed to be the responsible party back of the complicated transportation situation that he would see that the notes were paid. This proof and the other evidence of the record, it seems to us, fall far short of the facts necessary to the implication and resultant existence of an implied lien. Rather, it shows an unsecured bank loan to be taken out by the borrower at its convenience, in an amount not to exceed $2,000,000. The loan was one made in the ordinary course of business of the bank as a commercial institution, without misrepresentation as to progress of the reorganization or as to security or pledge. Appellant knew that the success of the proposal was problematical; it was well aware of the many dubious contingencies surrounding any attempt to reorganize all the transportation facilities of the city of Chicago, involving approval of state and municipal legislative bodies and federal courts, complicated financial structures of several companies and scores of classes of security holders. Appreciating the uncertainty of success, it demanded corporate guarantees. These not being forthcoming, it sought and obtained the oral reassurance of Mr. Insull and admittedly relied upon the same. It depended, not upon misstatements of facts by the transit company, but upon hopes for the future. No estoppel arose; no constructive trust relationship can be implied; no implied lien came into existence. The language of Mr. Chief Justice Hughes in McKey, Trustee, etc. v. Paradise, Trustee, 57 S.Ct. 124, 125, 81 L.Ed. ——, decided December 7, 1936, is applicable.

"It would be impossible to state all the circumstances in which equity will fasten a constructive trust upon property in order to frustrate a violation of fiduciary duty. See 3 Pomeroy, Equity Jurisprudence, § 1044 et seq. But the mere failure to pay a

debt does not belong in that category. We do not find that the record shows anything more than that in this instance."

The decree is affirmed.