In re MINTON GROUP, INC., Debtor.

Sidney TURNER, as Trustee, Plaintiff,

v.

EMMONS & WILSON, INC., Jimmy F. Markham and Janine K. Markham, Beatrice Darsie, Robert B. Frederick, John D. Lethbridge, Realtech Professional Association, Inc., Town of New Canaan, Defendants.

Bankruptcy No. 82 B 20590.
Adv. No. 6316.

United States Bankruptcy Court,
S.D. New York.

March 15, 1983.

Sidney Turner, P.C., White Plains, N.Y., Trustee, pro se.

Slavitt, Connery & Vardamis, Norwalk, Conn., for Darsie, Frederick and Lethbridge.

Whitman & Ransom, Stamford, Conn., for Jimmy and Janine Markham.

Robert J. Eichelburg, White Plains, N.Y., for Martha Buckingham.

William C. Bieluch, Jr., Darien, Conn., for Emmons & Wilson, Inc.

Reich & Reich, White Plains, N.Y., for Town of New Canaan.

## DECISION ON TRUSTEE'S COMPLAINT TO AVOID POST–PETITION ATTACHMENTS ENTERED AGAINST DEBTOR'S REAL PROPERTY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy of Minton Group, Inc. seeks to avoid four prejudgment attachments entered against real property owned by the debtor situated in New Canaan, Connecticut. The attachments were all entered against the property after the commencement of the debtor's Chapter 11 case. Thus, the trustee alleges that the recording of these liens pursuant to Connecticut law constituted a violation of the automatic stay under Code § 362 as well as a post-petition transfer of the debtor's property that is proscribed under Code § 549. Five of the defendants (the Markhams; Darsie, Frederick, Lethbridge) maintain that the trustee should not be permitted to set aside the attachments on either ground, because they have asserted an equitable ownership in the property under a resulting or constructive trust theory. They argue that the trustee has no avoiding powers as to the Connecticut property if it is not owned by the debtor, and that such property would not belong to the debtor's estate, nor be subject to administration within the context of the Chapter 11 proceeding. Alternatively, these defendants request the impression of an equitable lien on the property to the extent of their claims. Defendant Buckingham adopts the arguments made by the five aforementioned defendants, but has not filed any prejudgment attachment against the property.

Defendant Emmons & Wilson, Inc. does not assert an equitable ownership in the property, nor does it assert an equitable lien in its favor. However, it contends that the attachment it entered against the property is a statutory lien that relates back to the pre-petition state court order authorizing a prejudgment attachment, and is not a post-petition recording that would offend the spirit of Code § 362(a)(4).

Hence, the issue posed by the parties is whether these six defendants who assert equitable rights in the property can escape the reach of the automatic stay under Code § 362, or the trustee's avoiding powers.

## FINDINGS OF FACT

1. An involuntary petition under Chapter 11 of the Bankruptcy Code was filed against the debtor, Minton Group, Inc., on September 28, 1982. The order for relief was entered on October 23, 1982.

2. On October 26, 1982, the plaintiff, Sidney Turner, was designated the trustee of Minton Group, Inc., pursuant to Bankruptcy Code § 1104.

3. The trustee commenced an adversary proceeding pursuant to Bankruptcy Rule 701 on December 17, 1982, seeking to avoid several post-petition writs of attachment entered against the debtor's property.

4. The trustee's complaint was dismissed as to the defendant Town of New Canaan. A default was entered against the defendant Realtech Professional Association, Inc.

5. Martha Buckingham, although not named as a defendant in the trustee's complaint, sought permission to intervene as a defendant, which the court granted.

6. The debtor holds title to real property situated in Fairfield County, Connecticut, known as units 1 & 2 of the Realtech Professional Condominium, located at 49 Pine Street, New Canaan.

7. The defendants Darsie, Frederick, Lethbridge, Markham and Buckingham assert an equitable ownership in the property under a resulting trust or constructive trust theory; alternatively they seek the impression of equitable liens on the property.

8. Emmons & Wilson, Inc. does not claim any equitable ownership in the property, nor does it request the establishment of an equitable lien in its favor. Instead, it defends its attachment on the theory that it is a statutory lien that relates back to a state court authorization of a prejudgment attachment, and does not violate the automatic stay with respect to post-petition perfection of liens.

9. The debtor purchased the Pine Street property on January 18, 1982 from The King-Casey, Incorporated Profit Sharing Trust for a total price of $345,000, paid for with $95,000 cash and a $250,000 mortgage executed in favor of the grantor.

10. Walter E. Wlodarski, President of the debtor Minton Group, Inc., approached the defendants Markham (Jimmy & Janine), Darsie, Lethbridge, Frederick, and Buckingham seeking capital for the formation of a limited partnership that was to be known as Darwood Associates. These six defendants were to be the limited partners and Minton Group was to be the general partner. Minton Group was to convey the property to the limited partnership when it became effective.

11. Defendant Darsie tendered a check in the amount of $25,000 to Wlodarski, dated June 26, 1981, payable to the order of "W.E. Wlodarski P.C. Trustee." Her check predates Minton Group's purchase of the property by approximately six and one-half months. The other defendants tendered checks to Wlodarski dated as indicated below and for the following amounts:

| (a) | The Markhams: | 1/25/82 | $25,000 |
| (b) | Frederick: | 2/ 8/82 | $25,000 |
| (c) | Lethbridge: | 1/29/82 | $10,000 |
| (d) | Buckingham: | 1/29/82 | $10,000 |

These four checks were all made payable to the order of Minton Group, Inc. As reflected by the dates, all of these checks were tendered after the debtor had already purchased the property on January 18, 1982.

12. Exhibit # 4 in evidence at the February 8, 1983 hearing held in this court is a letter dated January 28, 1982 addressed to Richard Buckingham, husband of the defendant Martha Buckingham. It acknowl-edges receipt of their check for $10,000 "for investment in *Darwood Associates limited partnership*." [Emphasis added]. The letter is signed "Walter Wlodarski, President, the Minton Group, Inc., General Partner, Darwood Associates." Copies of two other letters, identical in content except for the amounts stated, dated January 28, 1982 and February 9, 1982, and addressed to defendants Lethbridge and Frederick, respectively, were filed with the court on February 1, 1983. Additionally, there is a December 28, 1981 letter addressed to Frederick setting forth a financial summary pertaining to the proposed limited partnership, Darwood Associates. Testimony elicited from Darsie and Markham indicated their own familiarity with the proposed limited partnership venture. Therefore, the four letters and the testimony support the finding that these six defendants understood that their investments related to the organization of a limited partnership in which they were to be the investing limited partners.

13. Notwithstanding this evidence, all of the defendants maintain that Wlodarski told them that their investments were to be used to purchase a part ownership interest in the 49 Pine Street property, and the percentage owned by each investor would correspond proportionally to the amount of their individual investments.

14. Markham and Buckingham testified that they did not know that Minton Group had purchased the Pine Street property prior to the time their checks were tendered. Markham stated that Wlodarski had urged her to furnish her share of the funds immediately, telling her that the property "had just come on the market" and that the investment opportunity might easily be lost without quick action.

15. The parties have agreed that all of their actions were to be governed by the laws of the State of Connecticut and that the limited partnership was to be formed under the Limited Partnership Act as adopted in that state and set forth in Conn. Gen.Stat. § 34–9 et seq. Each of the defendants is a resident of the State of Connecticut.

16. The limited partnership was never formed because one of the prospective limited partners, Jimmy F. Markham, did not execute the limited partnership agreement when it was first presented for the Markhams' signature in July, 1982. The Markhams objected to certain language in the agreement which did not limit the property to be owned by the partnership to the 49 Pine Street property, and which provided that the general partner was allowed to make assessments beyond their original investment. Since the partnership was never formed, Minton Group retained title to the property. Subsequent to the filing of the involuntary petition on September 28, 1982, several pre-judgment attachments were entered against the Pine Street property in favor of the following defendants, pursuant to Connecticut law, as indicated:

| | | | |
|---|---|---|---|
| (a) | Darsie, Frederick, Lethbridge | 10/1/82 | $60,000.00 |
| (b) | Jimmy & Janine Markham | 9/30/82 | $50,000.00 |
| (c) | Emmons & Wilson, Inc. | 9/29/82 | $10,000.00 |
| (d) | Realtech Professional Assn., Inc. | 10/26/81 | $ 383.23 |

Martha Buckingham did not cause any attachment to be filed against the property in her favor.

18. The trustee seeks to avoid all of the liens set forth above that were entered against the Pine Street property, on the grounds that their entry after the filing of the petition constituted a violation of the Bankruptcy Code § 362 automatic stay, as well as a proscribed post-petition transfer under Code § 549.

## DISCUSSION

Bankruptcy Code § 362 operates as an automatic stay upon the commencement of a bankruptcy case against any entity seeking to create, perfect or enforce any lien against property of the estate [11 U.S.C. § 362(a)(4)] or property of the debtor, to the extent such lien secures a claim that arose before the commencement of the case [11 U.S.C. § 362(a)(5)]. The four liens which the trustee seeks to avoid were entered against the 49 Pine Street property after the filing of the involuntary petition on September 28, 1982. The debtor is the owner of the property, as reflected in a warranty deed recorded on January 18, 1982. Therefore, unless the defendants can establish that their liens do not impair property of the estate or the debtor, the trustee can set them aside for having been created in violation of the automatic stay.

The trustee has been granted a default against Realtech Professional Association, Inc. Therefore, the trustee may avoid the lien entered against the property in favor of that entity. The answer filed on behalf of the defendant Emmons & Wilson, Inc., offers no challenge to the trustee's position that the debtor owns the property in question, and asserts no equitable ownership rights in the property. However, this defendant urges a relation back theory to sustain what it characterizes as a pre-petition statutory lien in its favor arising out of a post-petition attachment.

### The Relation Back Argument

Defendant Emmons & Wilson, Inc., recorded an attachment against the property of the debtor located at 49 Pine Street, New Canaan, Connecticut, in the amount of $10,000 to secure a judgment for insurance premiums allegedly due by reason of their obtaining insurance policies for another limited partnership of which Minton Group, Inc. was the general partner, namely, 3750 Bronx Boulevard Associates. The attachment was recorded on September 29, 1982, whereas this involuntary Chapter 11 case was commenced one day prior to that date, on September 28, 1982. However, the defendant Emmons & Wilson, Inc. contends that the attachment relates back, pursuant to Code § 546(b), to the state court order authorizing the attachment, which was issued by the Connecticut Court on September 28, 1982 at 11:35 AM, before the commencement of this case at 3:12 PM on September 28, 1982.

 The defendant's relation back theory is misplaced. Code § 546(b) was intended to protect pre-petition lien creditors

who could not perfect their liens because of the intervention of a bankruptcy case and allows "them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." *House Report* No. 95–595, 95th Cong., 1st Sess. (1977) 371; *Senate Report* No. 95–989, 95th Cong., 2d Sess. (1978) 86, U.S.Code Cong. & Admin. News 1978, pp. 5787, 5872, 6327. See *In re Fiorillo & Company,* 19 B.R. 21, 8 B.C.D. 1169, 6 C.B.C.2d 607 (Bkrtcy.S.D.N.Y.1982). In this case, defendant Emmons & Wilson, Inc. did not have a lien under Connecticut law by reason of their prejudgment attachment until they had completed the prerequisites under the statute by causing the town clerk to record the certificate of attachment in the land records of the town, which was effected *after* the commencement of this case. The governing Connecticut statute is § 52–285 of the Conn.Gen. Statutes, which reads as follows:

§ 52–285. Attachment of real estate

Real estate shall be attached by the officer by leaving in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment, which shall be endorsed by the town clerk with a note of the precise time of its reception and *recorded at length in the land records of such town; and such attachment, if completed as hereinafter provided, shall be considered as made when such certificate has been so lodged.* The certificate shall be signed by such officer, shall describe the land attached with reasonable certainty and shall specify the parties to the suit, the authority issuing the writ, the court to which the process is returnable and the amount of damages claimed; and unless the service is so completed, such estate shall not be held against any other creditor or bona fide purchaser. No such certificate left in the town clerk's office for record shall have the effect of the notice of action pending provided for in section 52–325. [Emphasis added].

The lien obtained as a result of recording a prejudgment attachment is a judicial lien, as defined in Code § 101(27) as follows:

(27) 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

See *In re Reardon,* 10 B.R. 697 (Bkrtcy. Conn.1981); *In re Laird,* 6 B.R. 273, (Bkrtcy.E.D.Pa.1981). Although the defendant had to comply with the attachment statute in order to obtain a lien, the lien so procured would not be a statutory lien that arises automatically without the need for filing or any form of judicial process such as recording. See *In re Taylor,* 17 B.R. 586, 588 (Bkrtcy.W.D.Pa.1982); *In re Reardon,* supra, at 700. A statutory lien is defined in Code § 101(38) as follows:

(38) 'statutory lien' means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;

The legislative history explains the difference between statutory liens and judicial liens as follows:

The definition excludes judicial liens and security interests, *whether or not they are provided for or are dependent on a statute,* and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien. (Emphasis added).

House Report No. 95–595, 95th Cong. 1st Sess. (1977) 314; Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 27, U.S. Code Cong. & Admin.News 1978, pp. 5813, 6271.

Accordingly, the judicial lien that the defendant, Emmons & Wilson, Inc., obtained against the debtor's real estate after the commencement of this case violates Code § 362(a)(4) which proscribes "any act to create, perfect, or enforce any lien against property of the estate". The attempted

perfection of the lien after the commencement of this case was ineffectual. Therefore, the alleged lien is null and void. See *In re Fosdick*, 16 B.R. 60 (Bkrtcy.N.D.Ohio 1981).

### Resulting Trust Theory

The defendants (Darsie, the Markhams, Frederick, Lethbridge) object to the trustee's attempt to avoid their liens and request an imposition of a resulting or constructive trust on the property; defendant Buckingham joins in the requested relief but has filed no lien against the property. Alternatively, these defendants seek to establish equitable liens on the property to protect their claims against the debtor. If these six defendants establish that they are the equitable owners of the Pine Street property, then they argue that the trustee would be prevented from attacking their liens, because his avoiding powers only relate to the property of the debtor and the estate.

Resulting trusts reflect the equitable doctrine that one who pays valuable consideration for property, but who does not take legal title, will be deemed the holder of equitable title to the property where the facts and circumstances indicate an intent (express or implied) to create a trust in favor of the person furnishing the consideration. Such resulting trusts are created by operation of law. Under Connecticut law, they arise in situations where purchase money for property is paid by one person, but legal title to the property is taken in the name of another. In such a case, a trust arises at the time of the purchase in favor of the person paying the money, while the holder of legal title becomes a trustee for the payor. *Fox v. Shanley*, 94 Conn. 350, 109 A. 249 (Conn. 1920); *Reynolds v. Reynolds*, 121 Conn. 153, 183 A. 394 (Conn.1936); *Ward v. Ward*, 59 Conn. 188, 195, 22 A. 149 (1890); *Walter v. Home National Bank & Trust Co.*, 148 Conn. 635, 173 A.2d 503 (Conn.1961). "This result follows the natural presumption that a purchase will inure to him who furnishes the purchase price." *Ward, supra*, 22 A. at 150.

In the circumstances surrounding a resulting trust there is always an implied or presumed intention to create a trust. *Barrows v. Bohan*, 41 Conn. 278 (Conn. 1874). The conveyance of legal title to the one who did not furnish the funds is made with the knowledge or consent, express or implied, of the person paying the consideration, and there is no fraud involved. Sometimes the parties involved in a transaction concerning real estate arrange the conveyance of title in such a manner simply as a matter of convenience. For example, In *Fox v. Shanley, supra,* a husband and wife purchased land; both contributed purchase money funds. Since the husband could not arrange to be present at a meeting with a lawyer where his attendance was required in order to have the deed put in both their names, the wife agreed to go to the lawyer herself, telling her husband that they could add his name to the deed at a later time. The wife subsequently died before the deed was changed to reflect the husband's joint ownership, prompting the husband's claim of a resulting trust in the land held in his wife's name, to the extent of his contribution to the purchase price. The court granted the relief since it was the intention of the parties to create such a trust. The wife acquired title in her own name by prearrangement, not by means of any fraud.

Courts will not impose a resulting trust on property if there is evidence that the parties intended otherwise, as where the party who furnished no consideration accepts legal title as a gift from the one who furnished the funds. The latter party cannot then assert a resulting trust against the property, even with proof of having paid the entire purchase price. See, *Zack v. Guzauskas*, 171 Conn. 98, 368 A.2d 193 (Conn.1976); *Franke v. Franke*, 140 Conn. 133, 98 A.2d 804 (Conn.1953); *Reynolds v. Reynolds*, 121 Conn. 153, 183 A. 394 (Conn. 1936); *Wilson v. Warner*, 89 Conn. 243, 93 A. 533 (1915); *Ward v. Ward*, 59 Conn. 188, 22 A. 149 (1890). In *Reynolds v. Reynolds, supra,* the court held that a plaintiff who

had purchased land with his own funds, but placed the legal title in his wife's name, could not claim the land under a resulting trust theory, since he had waived such relief by asserting only a one-third intestate share in the property (instead of full ownership) and because he had failed to object when the property was offered for sale.

■ The party alleging the creation of a resulting trust must have paid over his money at or prior to the time of the conveyance. *Fox v. Shanley,* 94 Conn. 350, 109 A. 249 (Conn.1920). It cannot be created by an advance of purchase money *after* the purchase has been made by the party holding legal title with his own funds or his own credit. See generally, 89 *C.J.S.* Trusts § 119, § 120; 76 Am.Jur.2d § 197.

■ Except for defendant Darsie, the other defendants who are asserting equitable interests in the property under resulting trust, constructive trust, and/or equitable lien theories of relief (the Markhams; Frederick; Lethbridge; Buckingham;) (hereinafter, "the Quintet") advanced money to Minton Group, Inc., the prospective general partner of the planned limited partnership, *after* the property, located at 49 Pine Street, New Canaan, had already been purchased by Minton Group, Inc. for $345,000 with its *own* funds: a $250,000 mortgage plus $95,000 in cash. The advance of money *subsequent* to the purchase of the property would itself suffice to remove the fact situation from a resulting trust framework. As for Mrs. Darsie, the $25,000 check dated June 26, 1981 made payable to Wlodarski's trustee account, and not to Minton Group, Inc., was indeed furnished prior to the purchase of the property on January 18, 1982, but would not create a resulting trust in her favor any more than for the others. It must be emphasized that these six individuals were not "buying" an interest in the property directly. There was no implied intention that Minton Group was holding title to the property for the benefit of any of the individuals. While the defendants may not have completely understood the legal ramifications of their actions, they were all aware that what was contemplated

was the formulation of a limited partnership, to which they were contributing the investment capital as limited partners. This is made clear by the letters received from and signed by Wlodarski acknowledging their investments in the *limited partnership,* and testimony adduced at the hearing indicating an understanding of the limited partnership arrangement. Although the defendants testified as to their understanding that they were purchasing part-interests in the Pine Street property in exchange for their funds, their misapprehensions will not serve to alter the legal consequences of their conduct. Purchasing property is not an accurate characterization of the structure of the proposed limited partnership deal. Wlodarski, as President of Minton Group, Inc., purchased the property in the debtor's name. Although the quintet did not know that the property had already been purchased before they gave funds to Minton Group, the end result is not changed. The funds, whether delivered before or after the sale, represented the individuals' capital investments as limited partners in a proposed limited partnership venture. Once the limited partnership was formed, Minton Group was to convey the property to the limited partnership, and that entity, the partnership, would take title to the real estate; it was not contemplated that title would be held by the six individual limited partners and reflected in a deed naming them all as joint owners. The real estate was to be the partnership property, held in the partnership name. The limited partners were to have a percentage interest *in the partnership* in proportion to the extent of their capital contribution. A limited partner's interest in a limited partnership is *personal property,* Connecticut Gen.Stat. § 34–26, even in a firm that deals solely in real estate. The funds they advanced were the means by which they were to acquire a *personal property* interest in a limited partnership which would own the real property in question. The defendants were not buying real property. As it turned out, the limited partnership was never effectively established because one of the prospective limited part-

ners refused to execute the partnership agreement. However, the defendants have shown no factual circumstances to support the impression of a resulting trust on the property, because there was never any presumed or implied intention that Minton Group was holding the property for the benefit of any of the individuals. Moreover, the quintet advanced their funds *after* the acquisition of the property, defeating a resulting trust theory on that basis alone. Furthermore, defendant Darsie has not shown that her contribution of $25,000, advanced prior to Minton Group's procurement of title, was part of the $95,000 purchase money paid by Minton Group. Indeed, Mrs. Darsie's check was paid to the order of Wlodarski's individual trustee account, and not to Minton Group, Inc. Hence, the money cannot be traced to the debtor. Therefore, the parties have failed to sustain their request for the impression of a resulting trust on the property, and such relief is denied.

### Constructive Trust Theory

 Whether or not a trust has been established is a matter of state law. *In re Faber's, Inc.,* 360 F.Supp. 946 (D.Connecticut 1973). See 4A *Collier,* ¶ 70.25 at 348 (14th ed.). Connecticut law recognizes the equitable remedy of the constructive trust, see *Worobey v. Sibieth,* 136 Conn. 352, 71 A.2d 80 (Conn.1949), but that remedy is not invoked lightly. In order for a particular set of circumstances to give rise to a constructive trust, there must be evidence of fraud, either actual or constructive, surrounding the acquisition of title to the property in question. *Millard v. Green,* 94 Conn. 597, 110 A. 177 (Conn.1920); *Reynolds v. Reynolds,* 121 Conn. 153, 183 A. 394 (Conn. 1936); *Van Auken v. Tyrrell,* 130 Conn. 289, 33 A.2d 339 (1943).

"A constructive trust arises where a person clothed with some fiduciary character, by fraud or other action upon his part, gains something for himself which, except for his act, he would not have procured and which it is inequitable for him to retain. If one obtains property by such arts, acts, or circumstances of cir-

cumvention, imposition, or fraud or by virtue of a confidential relationship and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, hold and enjoy the beneficial interest, the court, in order to achieve complete equity, will declare a trust by construction and convert the offending party into a trustee and order him to hold the same subject to a lien or direct him to execute the trust so as to protect fully the rights of the defrauded or deceived party.... Courts of equity declare trusts of this character and recognize equitable liens because of what they deem fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. The constructive trust may be one in which the existence of confidential relation and subsequent abuse of the confidence reposed produce a result abhorrent to equity." *Continental Illinois National Bank & Trust Co. v. Continental Illinois Nat. Bank,* 87 F.2d 934, 936 (7th Cir.1937). The burden of proof is on the counterclaiming defendants to establish that their claim is of this nature. Fraudulent acts or omissions occurring *after* the acquisition of title and having no connection to it will not create a constructive trust.

"The law raises a constructive trust by reason of fraudulent acts and purposes in procuring title to the land." *Reynolds v. Reynolds,* supra, 183 A. at 396 (quoting a Maryland case, *Byer v. Szandrowski,* 160 Md. 212, 153 A. 49).

\* \* \* \* \* \*

"An intentionally false and fraudulent verbal promise, to begin with, obtaining the conveyance, is essential." *Reynolds,* supra, 182 A. at 396.

See also, *Maltbie v. Olds,* 88 Conn. 633, 92 A. 403 (Conn.1914); *Verzier v. Convard,* 75 Conn. 1, 52 A. 255 (Conn.1902) [both cases denying imposition of constructive trust; no fraud at time of the agreement nor at time of acquisition of property].

Constructive trusts arise under Connecticut law in several different contexts. In

*Verzier v. Convard,* 75 Conn. 1, 52 A. 255 (Conn.1902), the court pointed out several factors that may, under the proper circumstances, serve as the basis for the creation of a constructive trust, such as fraud, misrepresentation, imposition, circumvention, artifice or abuse of confidential relations. This last factor has formed the basis for Connecticut courts to impose constructive trusts in two basic situations involving confidential relationships.

■ (1) Breach of an agreement to dispose of testamentary property as promised, after promisor induced someone with whom the promisor shared a confidential relationship to convey property to the promisor. An example of this situation occurred in *Starzec v. Kida,* 183 Conn. 41, 438 A.2d 1157 (Conn.1981), where a husband devised certain real property to his second wife, in reliance on her promise to devise the property to his children. Instead, she devised it to her niece. His children requested that a constructive trust be imposed on the property. The mere breach of an agreement or repudiation of a promise is not enough in itself to create a constructive trust. *Reynolds v. Reynolds,* 121 Conn. 153, 183 A. 394 (Conn.1936). However, the *Starzec* court found that there had been a breach of a confidential relationship between the husband and wife and that the circumstances warranted the creation of a constructive trust. The court observed that the weight of authority supported the imposition of constructive trusts where a testator's intended beneficiary did not receive the property, in order to prevent the unjust enrichment of those who failed to perform a promise to convey the property that they received from the testator to the intended beneficiary. See *Starzec,* 438 A.2d at 1162, f.n.8; *Hanney v. Clark,* 124 Conn. 140, 198 A. 577 (Conn.1938). The Starzec court also noted that even without a confidential relationship between testator and devisee, courts allowed the testator's intended beneficiaries to take the property. *Id.* See, *Cohen v. Cohen,* 182 Conn. 199, 438 A.2d 55 (1980).

(2) Breach of agreement to reconvey land. In *Hieble v. Hieble,* 164 Conn. 56, 316 A.2d 777 (Conn.1972), a woman conveyed land to her son, believing she would not recover from a serious illness, receiving in return his promise to reconvey the land to her upon request in the event of her recovery. When the son refused to return the property, the court found a constructive trust in the mother's favor based on her confidential relationship with her son. However, in *Reynolds v. Reynolds,* 121 Conn. 153, 183 A. 394 (Conn.1936), the court refused to impose a constructive trust, even where there was a parent-child relationship between the parties, and the plaintiff's children did not honor an agreement to recognize their father's life tenancy in the subject property. The plaintiff father had first conveyed the land to his brother, but later requested that the brother convey the land to the defendants (the plaintiff's sons) providing that he (the plaintiff) might retain a life tenancy in the property. The court determined that there was no fraud involved which would sustain a finding of a constructive trust, and that at most there had been a mere breach of a promise which did not require the imposition of such a trust. The court apparently did not find that the particular facts warranted the equitable recognition of an abuse of a confidential relationship between the plaintiff and his sons which could serve as the basis for a constructive trust. The court stated that:

"A mere subsequent repudiation of the verbal promise is not enough . . . . If this were not so, every breach of a parol agreement for the sale of land would be enforceable upon the basis of a constructive trust. There is in this case no finding of a fraudulent intent not to keep the agreement at the time it was made." *Reynolds v. Reynolds,* supra, 183 A. at 396.

■ In the present case, it can be argued that Mr. Wlodarski was acting in a confidential relationship with the defendants because he served as an accountant to one of them and was president of the general partner that was to establish the limit-

ed partnership. Thus, his relationship with the individuals could be viewed as one of a fiduciary nature. A fiduciary relationship can serve as the basis for finding a confidential relationship between the parties. *Starzec v. Kida,* 183 Conn. 41, 438 A.2d 1157 (Conn.1981), fn. 1, at 1159. As discussed above, if such a relationship is abused, courts have been willing to impose constructive trusts. However, the instant case does not concern a failure to reconvey property as promised, or a failure to dispose of testamentary property to an intended beneficiary. The basis of the defendant's counterclaims is Wlodarski's failure to establish the limited partnership with the funds that were advanced. While the defendants contend that he promised to purchase land for them, and failed to do so, it has already been pointed out that there was never any intention to convey land to any of them individually as tenants in common jointly owning land, with such ownership interests to be reflected in a deed. Furthermore, it is Minton Group, Inc. which purchased the property and acquired title, not Wlodarski individually, and it certainly cannot be said that the parties enjoyed a confidential relationship with a corporate entity. It is true that Wlodarski failed to establish the limited partnership and has apparently dissipated the defendant's funds. However, these funds cannot be traced to the Pine Street property, because they were not used to purchase the property; Minton Group used its own funds to acquire the property. Thus, there is no property which can be the subject of a constructive trust. Moreover, the $95,000 in checks advanced by the defendants cannot be attributed to the purchase of property by Minton Group because the defendants were not *purchasing real property,* but rather *investing in a limited partnership* that was to take title to the property after formation of the partnership. Their investments would represent their proportional personal property interests in the partnership. As to the quintet's assertion that Minton Group's acquisition of the land prior to Wlodarski's solicitation of their individual investments constituted a fraudulent inducement to take their money,

it must be emphasized that the defendant's have not proven that when Wlodarski received their advances he did not intend to follow through with the establishment of the limited partnership. "There is in this case, no finding of a fraudulent intent not to keep the agreement at the time it was made." *Reynolds,* supra, 183 A. at 396. Concededly the limited partnership was never established, but this was caused by the failure of one of the defendants, Jimmy Markham, to execute the limited partnership agreement. Thus, it was never formed under Connecticut law. See Conn.Gen.Statutes, § 34–10. Any fraud that may have occurred in this case did not occur when Minton Group acquired title to the property. The fraud, if any, occurred *after* title was acquired. As noted above, fraud must occur at the time of the agreement or at the time of the acquisition of the property. Eg., *Millard v. Green,* 94 Conn. 597, 110 A. 177 (Conn.1920); *Harper v. Adametz,* 142 Conn. 218, 113 A.2d 136 (Conn.1955). This is a simple case of misappropriated funds that were advanced for a particular purpose, to form a limited partnership, which did not become effective. The parties did not receive a refund of their money and Minton Group is now in Chapter 11. In *McDonald v. Hartford Trust Co.,* 104 Conn. 169, 132 A. 902 (Conn.1926) the court observed that equity will impress a trust on property given to an agent in a fiduciary capacity for a particular purpose, provided it can be traced to the property owned by the agent or proceeds of such property. However, as already explained, the checks advanced by the defendants cannot be attributed to the purchase of the Pine Street property. Therefore, that property may not be the subject of a constructive trust. See *In re Faber's Inc.,* 360 F.Supp. 946 (D.Conn.1973). "[T]he trust cannot be impressed upon the general assets where the estate is insolvent." *McDonald, supra,* 132 A. at 908.

### Equitable Lien Theory

One who advances money to pay the purchase price of real or personal prop-

erty under an agreement may seek to have a lien imposed upon the property if it is never received from the seller. Obviously, it is much more advantageous for a party to succeed in impressing a trust on property rather than merely an equitable lien, since in the former case the plaintiff is deemed to be the owner of the property, while in the latter the plaintiff is entitled to a lien only to the extent of money actually advanced. In effect however, the net result can be the same in both situations, since some courts, including those in Connecticut, have held that where a party has advanced only part of the purchase money, any trust imposed would only produce a lien to the extent of moneys expended. Thus, the right of recovery under a trust is limited under such circumstances in the same way as under an equitable lien theory. See, *Fox v. Shanley,* 94 Conn. 350, 109 A. 249 (Conn.1920); *Waterman v. Buckingham,* 79 Conn. 286, 64 A. 212 (Conn.1906); *Barrows v. Bohan,* 41 Conn. 278 (1874); *Balzano v. Balzano,* 135 Conn. 584, 67 A.2d 409 (1949).

Counsel for defendant Buckingham argues that the unexecuted limited partnership agreement can be looked to for an understanding of the parties' intent, citing *Butte Hardware Company v. Wallace,* 59 Conn. 336, 22 A. 330 (1890) as authority for this proposition. Counsel contends that paragraph 11.3 of the unexecuted limited partnership agreement reflects the parties' intention that the contributions of the limited partners would be refunded upon dissolution of the partnership in accordance with the Limited Partnership Law of Connecticut, with the exception that debts owed to the partners (other than profits, income or contributions) would be paid first. Thus, counsel reasons that Minton Group intended that the partnership property (specifically, 49 Pine Street) would serve as security for the contributions of the partners, i.e., that the contributions of the potential limited partners created liens on the partnership property. Counsel finds support for this conclusion by observing that the Limited Partnership Act sets forth certain priorities for satisfying partnership liabilities upon dissolution, thereby necessitating the payment of such debts and creating a statutory lien against the partnership assets for the contributions of limited partners.

Counsel's argument derives from the premise that this court can look to the unexecuted partnership agreement to discern what the parties had intended in connection with the formulation of the limited partnership. Indeed, the trustee uses the same premise in support of his own contention that this court should look to the limited partnership agreement as an aid in interpreting the parties' conduct and expectations, albeit for different reasons. However, their reliance on *Butte Hardware Company v. Wallace,* supra, as authorizing the reference to the partnership agreement for evidence of the parties' intentions is misplaced. *Butte Hardware* had absolutely nothing to do with limited partnerships or limited partnership agreements, and does not support the contention of counsel and the trustee. The case concerns a plaintiff's efforts to have the court imply a partnership from the manner in which a business was conducted by the two defendants. At one point, the court instructed the jury that "a partnership might be proved to exist by the acts of the parties when there was no agreement for one, and sometimes even against their intention." 22 A. at 331. This instruction relates to the creation of general partnerships. A limited partnership is purely a statutory creation and can exist only under the provisions of Conn.Gen. Statutes § 34–9 et seq. Substantial compliance with § 34–10 is required to create a limited partnership. If an unexecuted limited partnership agreement is to be given the same consideration as one executed and filed in accordance with the statutory requirements, then it hardly would seem necessary for those interested in establishing limited partnerships to trouble themselves with the formalities of statutory compliance. This court cannot accept the proposed limited partnership agreement as indicative of any of the parties' intentions because the document was never executed by one of the prospective limited partners, nor filed with the office of the Secretary of

State of Connecticut. Conn.Gen. Statutes, § 34–10.

■ Manifestly, if the limited partnership was never established, it seems pointless to predicate a lien theory on a state statutory scheme which ranks the partnership's liabilities for the purpose of disbursing partnership assets upon dissolution, especially when a major consequence of the failure to establish a limited partnership is that there is no partnership property which can be the subject of a lien for a limited partner's contribution.

■ Even if the limited partnership had been formed, and then was dissolved because of the filing of the involuntary petition against Minton Group, the general partner, [see Conn.Gen.Statutes, § 34–69(5)], the provisions of the Limited Partnership Act pertaining to the ranking of partnership claimants would be of no consequence in a bankruptcy context, where the federal scheme of distributional priorities for the debtor's assets would take precedence over any state created priorities that would conflict with federal policy.

"State trust law must not be allowed to pervert or override the distributive provisions of the Bankruptcy Act .... [S]tate rules of priority of distribution must yield in bankruptcy cases to that prescribed by the Act." 4 A Collier ¶ 70.25(2) p. 363–64 (14th ed.).

■ Finally, counsel for defendant Buckingham cites *Hurley v. Atchison T. & S.F.R. Co.,* 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909) to support her claim to an equitable interest in the property owned by Minton Group. In *Hurley,* the Court recognized an equitable lien on some unmined coal in favor of a railway company that had advanced money to a failing coal company to enable it to pay its employees. The advances allowed the coal company to continue mining coal under a contract it had with the railway company. The Court viewed the advances as having been made in anticipation of the delivery of coal. The Court reasoned that the railway company was paying for some of the coal before it was delivered, and was entitled to an amount of coal which the money so advanced would pay for under the provisions of their contract. The Court viewed the arrangement as evidencing the parties' intention to set apart an amount of coal after it was mined as security for the payment of advances. The Court was willing to treat the arrangement as one creating an equitable lien on the coal, as the parties had intended the transaction to be one for borrowing money and securing its repayment. Clearly this factual pattern is distinguishable from the present case. *Hurley* is illustrative of the principle that

"[a]n equitable lien may arise in favor of one who advances money to pay the purchase price of real or personal property under an agreement, *or circumstances showing an intention, that the property shall stand as security for the advancement.*" 51 Am.Jur.2d § 33. [Emphasis added].

However, as discussed earlier, the six limited partners were not purchasing any real property; they were making capital contributions to a limited partnership. There was no evidence that the limited partners intended their advancement of funds to be secured by the real property purchased by Minton Group. In the absence of such an agreement or intention, the most that can be said is that the advances made by the six prospective limited partners, if such advances are not treated as investments, could constitute debts owed to them by Minton Group, Inc. These claims do not give rise to equitable liens in their favor. They cannot attribute the advanced funds to land that was purchased by Minton Group because most of the funds were received subsequent to the debtor's acquisition of the property. Defendant Darsie's check was not payable to Minton Group; hence, it cannot be traced to the debtor or property purchased by the debtor. To establish an equitable lien, it is insufficient to show a mere failure to return money to the prospective limited partners. Failure to pay a debt does not warrant the imposition of an equitable lien. See, *McKey v. Paradise,* 299 U.S. 119, 57 S.Ct. 124, 81 L.Ed. 75 (1936).

*The Hypothetical Bona Fide Purchaser*

■ There is a more fundamental reason why the trustee should prevail in this case, although he has not addressed this point. Even if the defendants were able to establish that under Connecticut law they held recognizable equitable interests, either by virtue of a resulting or a constructive trust, the trustee, nevertheless, possesses superior rights under Code § 544(a)(3) as a hypothetical bona fide purchaser of real property from the debtor at the time of the commencement of the case, whether or not such a purchaser exists.

■ Connecticut law gives subsequent purchasers of real property priority over the rights of prior purchasers if the subsequent purchasers are bona fide purchasers for value without notice. Record notice defeats the claims of a subsequent purchaser.[1] The defendants' alleged equitable interests were not recorded. Therefore, Code § 544(a)(3) permits the trustee, as a hypothetical bona fide purchaser of real property from the debtor at the time of the commencement of the case, to defeat any unrecorded equitable interests in the real estate in question that the defendants may claim. *In re Hastings,* 4 B.R. 292, 6 B.C.D. 401 (Bkrtcy.Minn.1980); *In re Mazzetti,* 22 B.R. 538, 9 B.C.D. 686 (Bkrtcy.E.D. Mich.1982). See also, *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982).

Prior to the adoption of the Bankruptcy Reform Act of 1978, it was held that the trustee generally took the bankrupt's property subject to such equities or equitable interests that might have been created by situations in which the bankrupt was regarded as holding property impressed with a trust for others. See 4B *Collier on Bankruptcy* ¶ 70.62 at 695 (14th ed.) This principle has been applied under the Bankruptcy Code as to personal property. See *In re Fieldcrest Homes, Inc.,* 18 B.R. 678, 8 B.C.D. 1285 (Bkrtcy.E.D.Pa.1982). However, as to real property, the recording statutes give a

bona fide purchaser of real estate superior rights to those of prior unrecorded equitable interests. Under the former Bankruptcy Act the trustee in bankruptcy did not enjoy the status of a hypothetical bona fide purchaser. This feature was added, however, to the trustee's so-called strong arm powers with the addition of Code § 544(a)(3). This point was explained in 2 *Norton Bankruptcy Law and Practice* § 30.05 at page 11:

Code § 544(a)(3) clothes the trustee with the status of a bona fide purchaser of real estate. The genesis of this provision lies in the history of avoidance powers under § 70(c) of the Bankruptcy Act. Both the Bankruptcy Act and the Code grant the trustee judgment lien status as to all property of the debtor. With respect to personal property interests, this provision typically results in avoidance of all unperfected security interests. With reference to real estate interests, however, the impact of judgment lien status is less consistent. Recording laws in a number of states render unrecorded transfers vulnerable only to subsequent bona fide purchasers without notice of the unrecorded interest. Under the Bankruptcy Act, therefore, treatment of unrecorded real estate interests was not uniform. Some, but not all, such transfers were subject to avoidance. The addition of Code § 544(a)(3) rectifies this lack of consistency. Taken together with the other portions of Code § 544, the bona fide purchaser status tends toward an express policy that, where recording acts exist and no grace period is applicable, transfers not recorded or perfected prior to the petition are avoidable in bankruptcy.

Therefore, the trustee in bankruptcy may avoid any equitable interests that the defendants may assert with respect to the Connecticut real estate in question pursuant to Code § 544(a)(3).

---

1. Conn.Gen.Statutes, § 47–10. *Deeds to be recorded*

No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed.

*Conclusions of Law*

1. The trustee's complaint requesting that the attachment entered against the property on September 29, 1982 by defendant Emmons & Wilson, Inc. be voided is granted.

2. The trustee's complaint requesting that the attachment entered against the property on October 1, 1982 by defendants Darsie, Frederick, and Lethbridge be voided is granted.

3. The trustee's complaint requesting that the attachment entered against the property on September 30, 1982 by defendants Jimmy and Janine Markham be voided is granted.

4. The counterclaims of defendants Darsie, Frederick, Lethbridge, Markham and Buckingham requesting an impression on the property of a resulting or constructive trust, or equitable liens in their favor are denied.

5. The equitable interests asserted by the defendants with respect to the Connecticut real estate in question are defeated by the trustee pursuant to Code § 544(a)(3) in his status as a hypothetical bona fide purchaser of the real property from the debtor at the time of the commencement of this case.

Submit order on notice.